UNITED STATES

v.

**Technical Sergeant Winchester ROBINSON, Jr., United States Air Force.**

ACM 33925.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 Oct. 1999.

Decided 29 Oct. 2001.

Appellate Counsel for Appellant: Lieutenant Colonel Timothy W. Murphy and Major Stephen P. Kelly.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and Major Leslea T. Pickle.

Before SCHLEGEL, ROBERTS, and BRESLIN, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Judge:

At a preliminary session of this general court-martial, the appellant moved to suppress evidence of the appellant's use and possession of cocaine, discovered as a result of a traffic stop and ensuing searches of the appellant and his vehicle. After hearing evidence and argument, the military judge denied the motion.

Thereafter, the appellant was convicted, in accordance with his pleas, of the wrongful use and possession of cocaine, simple assault upon his spouse, and two specifications of disobeying lawful orders, in violation of Articles 112a, 128 and 92, UCMJ, 10 U.S.C. §§ 912a, 928, 892. Pursuant to Rule for Courts Martial (R.C.M.) 910(a)(2), the convening authority and the military judge accepted the appellant's conditional guilty plea to the drug offenses, thereby preserving for appellate review the correctness of the military judge's ruling. The sentence adjudged and approved included a bad-conduct discharge, confinement for 6 months, and reduction to E–4.

The appellant now renews his argument that the traffic stop was unlawful and that the military judge should have suppressed the results of the searches. He also maintains he is entitled to a new post-trial action because the convening authority failed to include in the formal action a reference to the approved waiver of involuntary forfeitures under Article 58b, UCMJ, 10 U.S.C. § 858b.

### Motion to Suppress

Mark Jennewein is an officer in the police department of Melbourne, Florida. Previously, he had been an Air Force security policeman for over five years, most recently at Patrick Air Force Base (AFB), Florida.

On 27 February 1999, he was working the midnight shift in Melbourne. He was on routine patrol in a marked police cruiser in a high-crime area known for its drug and prostitution activity. At about 0100 hours, he noticed a maroon, four-door Oldsmobile parked in the dirt driveway of a house belonging to a drug dealer well known to him. Officer Jennewein checked the license plate number through his computer, which revealed that the car's owner lived on Patrick AFB. He examined the stickers on the car, noting that it bore a yellow sticker meaning the registered owner was a non-commissioned officer assigned to Patrick AFB. Officer Jennewein waited across the street at the Community Policing Unit field office to see if anyone approached the vehicle. He radioed another patrolman, Officer Duffy, who was also a reservist assigned to Patrick AFB, who informed him the address was next door to a former supervisor's house on the installation. After 10 or 15 minutes, Officer Jennewein was called away for other duties.

A short time later, Officer Jennewein parked his patrol car behind a vacant store on U.S. Route 1, a location known to be frequented by prostitutes. Shortly after arriving, Officer Jennewein saw the same maroon Oldsmobile travelling on the roadway. He pulled out and got right behind the vehicle. Within two or three seconds, the Oldsmobile turned off the roadway into an alley without giving a turn signal. Officer Jennewein indicated that he was directly behind the vehicle when it turned, but that the other driver's failure to use his turn signal did not cause the officer to brake suddenly, or swerve to void the vehicle. Officer Jennewein activated his red and blue lights and made a traffic stop.

Officer Jennewein approached the Oldsmobile and asked the driver (the appellant) to produce his driver's license, registration, and proof of insurance. The appellant fumbled with his wallet, and was able to present his driver's license but not the other requested items. Officer Jennewein told him to keep looking for the other documents. Officer Jennewein then inquired how the appellant

knew the passenger, and the appellant indicated they had just met.

Officer Jennewein then spoke to the passenger, Floyd Simmons. Mr. Simmons was "rough" looking, with tattered clothing, and somewhat emaciated, "like a street person." He had no identification, but said he lived in the neighborhood. Mr. Simmons said he knew the appellant because they were block masons, and worked together for the last six months at the Daily Labor. Officer Jennewein called in Mr. Simmon's information on his police radio to check for outstanding warrants. Finding none, he allowed Mr. Simmons to leave.

Officer Jennewein returned to the appellant, who had found his registration. Officer Duffy arrived in her patrol car as a back-up. Officer Jennewein noticed that the appellant's address on his license did not match the address on his registration. The officer then radioed in the appellant's personal information to check for outstanding warrants.

Officer Jennewein asked the appellant if he had any drugs or weapons in his car, and the appellant said he did not. Officer Jennewein asked for consent to search the vehicle, but the appellant declined. Officer Jennewein radioed for a canine unit. During this time, Officer Jennewein was still waiting for a response to his radioed inquiry concerning the appellant. During the conversation with the appellant, Officer Jennewein noticed an odor of alcohol coming from the appellant's person. The appellant's speech seemed somewhat "mumbled," and his eyes were watery and bloodshot.

Officer Jennewein began writing a citation for failing to change the address on his registration. While he was writing the citation, the canine unit arrived. Officer Jennewein asked the officer to walk the drug-detecting dog, Rexx, around the appellant's car. Officer Jennewein advised the appellant that he suspected him of driving under the influence of alcohol. Officer Jennewein asked if he would submit to a field sobriety exercise. The appellant declined. At that time, the drug-detecting dog alerted on the appellant's vehicle, indicating the dog detected the odor of narcotics. Officer Jennewein advised the appellant he was being detained upon probable cause that he had a narcotic substance in his car, handcuffed him, and placed him in the patrol car.

Officers Jennewein and Markowski searched the appellant's vehicle, and found cocaine in rock form and a metal rod, curved on one end, which they recognized as drug abuse paraphernalia. A field test at the scene was positive for cocaine. Officer Jennewein then informed the appellant he was under arrest for possession of cocaine as well as driving under the influence of alcohol.

The defense moved to suppress all the fruits of the search of the appellant's car and his person. Defense counsel cited *State v. Riley*, 638 So.2d 507 (Fla.1994), a decision of the Florida Supreme Court holding that failure to use a turn signal is not an offense under Florida law where the turn did not affect other vehicles. The defense counsel argued that since the failure to use a turn signal was not an offense, the officer had no probable cause to stop the appellant's vehicle, and the evidence obtained from the unlawful stop must be considered fruit of the poisonous tree. Defense counsel also maintained that the stop took too long, essentially becoming an unlawful detention. The trial counsel cited *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and argued that all that was required to conduct a brief investigative stop on a vehicle was a reasonable, articulable suspicion of criminal activity. Trial counsel argued that considering all the facts known to the officer that night, there was a legally sufficient basis for the stop. The military judge denied the motion, finding that Officer Jennewein had probable cause to believe the appellant had violated Florida state law requiring the use of a turn signal because Officer's Jennewein's vehicle "may have been affected" by the appellant's turn. The military judge found that the stop was not unreasonably long under the circumstances. She also found that the alert by the drug-detecting dog provided probable cause to search the appellant's vehicle.

The appellant argues to this Court that the military judge erred in denying the motion to suppress. The appellant maintains that it is

not unlawful in Florida to turn without signaling if no other vehicle is affected by the turn. *Riley*, 638 So.2d at 507. The appellant contends Officer Jennewein did not have probable cause to believe that a traffic violation had occurred, therefore the stop was unlawful and the fruits of the unlawful seizure must be suppressed. The government responds that there was evidence on the record from which we could determine that there was traffic on the roadway that may have been affected by the turn. The government also argues that the failure to signal created a reasonable suspicion that the driver was intoxicated, which was sufficient to justify an investigative stop.

■ We review a military judge's decision to deny a motion to suppress evidence for an abuse of discretion. *United States v. Beckett*, 49 M.J. 354, 356–57 (1998). Findings of fact are reviewed using a clearly erroneous standard, and conclusions of law are reviewed de novo. *United States v. Ayala*, 43 M.J. 296, 298 (1995).

In ruling on the motion, the military judge made extensive findings of fact and conclusions of law. The military judge's findings of fact are supported by the evidence presented during the hearing and are not clearly erroneous. The military judge also concluded as a matter of law that Officer Jennewein had probable cause to believe that a traffic violation had occurred when he saw the appellant's car, which was right in front of his, brake suddenly and turn right without signaling. The military judge ruled this was a violation of the Florida statute requiring turn signals when any other vehicle "may" be affected by the movement. We review this conclusion de novo.

> Florida Statute § 316.155 (1999) provides,
> (1) No person may turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement.

In *Riley*, 638 So.2d 507, the Florida Supreme Court held that this statute required proof that another vehicle was actually affected by the turn. It is arguable that the Court in *Riley* did not specifically rule on this construction, but instead focused their analysis on whether subsections (1) and (2) of the statute must be construed separately or in pari materia. However, later decisions of the Court held that the statute requires that another vehicle actually be affected. *See State v. Daniel*, 665 So.2d 1040 (1995), *overruled on other grounds, Holland v. State*, 696 So.2d 757 (1997). The Florida Supreme Court is the ultimate authority on the scope and construction of state statutes. *United States v. Allen*, 27 M.J. 234, 238 (C.M.A. 1988). Although the construction in *Riley* seems to strain the language of the statute, it is binding. For this reason, we must conclude that the military judge erred in applying the Florida law, and that Officer Jennewein did not have probable cause to believe the appellant had committed a crime based upon the appellant's failure to provide a turn signal.

The appellant contends that the lack of probable cause for arrest requires that all the evidence derived from the arrest be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Contrary to the appellant's contention, however, this does not end our inquiry. We must determine whether there is some other basis in the law for the stop and the resulting searches that led to the evidence of the use and possession of cocaine.

## A. Objective Review

■ The first issue is whether this Court, in reviewing the basis for the stop, is limited to considering the reasons subjectively relied upon by Officer Jennewein. Although there is little military case law on this matter, the Supreme Court has made it clear that we are not bound by the officer's subjective basis for the stop. In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Court considered the lawfulness of a search incident to apprehension, when the arresting officer testified that he had no fear of the respondent and did not suspect the respondent was armed. The Court made clear that the officer's subjective beliefs were

not controlling, rather the fact of the lawful arrest established the legal authority to search the subject. *Id.* at 235, 94 S.Ct. 467.

In ·*Scott v. United States,* 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), the Supreme Court considered a case involving a wiretap under 18 U.S.C. §§ 2510–2520 (1976) which required law enforcement officers to minimize the interception of communications not otherwise subject to interception. The law enforcement agent testified that no real effort had been made to minimize the interceptions. The government argued nonetheless that the interceptions were reasonable under the circumstances. The District Court ordered the results of the wiretap suppressed based upon the officer's testimony. Ultimately, the Court of Appeals reversed the District Court, ruling that "the presence or absence of a good faith attempt to minimize on the part of the agents is undoubtedly one factor to be considered in assessing whether the minimization requirement has been satisfied," but went on to hold that "the decision on the suppression motion must ultimately be based on the reasonableness of the actual interceptions and not on whether the agents subjectively intended to minimize their interceptions." *Scott,* 436 U.S. at 134, 98 S.Ct. 1717 (quoting *United States v. Scott,* 516 F.2d 751, 756 (C.A.D.C.1975)). The Supreme Court adopted the analysis of the Court of Appeals, holding that the officer's subjective intent alone does not make otherwise lawful conduct illegal or unconstitutional.

The Supreme Court in *Scott* prescribed a two-step approach to the required analysis. First, a Court must determine whether there has been a statutory or constitutional violation. This is not based upon the officer's subjective purpose, but rather based upon an objective review of the facts known to him at that time. The Supreme Court held that the officer's subjective state of mind does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. If a reviewing court finds a violation, then it proceeds to the second part of the analysis—what remedy is appropriate. In this second part of the analysis, "official motives may play some part in determining whether application of the exclusionary rule is appropriate." *Scott,* 436 U.S. at 135–36, 98 S.Ct. 1717.

In *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), plainclothes vice-squad members patrolling a "high-drug area" in Washington D.C. became suspicious when they observed a vehicle stopped at an intersection for an unusually long time—more than 20 seconds—with youthful occupants and a driver looking into the passenger's lap. When the unmarked patrol car turned around and headed back to the vehicle, the suspect vehicle turned suddenly, without signaling, and drove off at an unreasonable speed. The police followed, overtook the suspect vehicle at a traffic light, and stopped the suspect vehicle. The officers saw two bags of what appeared to be crack cocaine in the passenger's lap, and arrested the subjects. At a pretrial suppression hearing, the defense argued that the officer's asserted reason for the traffic stop— to give the driver a warning about traffic violations—was pretextual. The District Court denied the motion to suppress. The Court of Appeals affirmed, holding that, "regardless of whether a police officer subjectively believes that the occupants of an automobile may be engaging in some other illegal behavior, a traffic stop is permissible as long as a reasonable officer in the same circumstances *could have* stopped the car for the suspected traffic violation." *United States v. Whren,* 53 F.3d 371, 374–75 (C.A.D.C.1995). The Supreme Court affirmed, holding that subjective intentions play no role in ordinary, probable cause Fourth Amendment analysis. 517 U.S. at 813, 116 S.Ct. 1769.

The Supreme Court reaffirmed its position in *Whren* in *Arkansas v. Sullivan,* 532 U.S. 769, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001). There, the Arkansas Supreme Court declined to follow *Whren,* and upheld the suppression of evidence based upon the trial court's findings concerning the police officer's ulterior motives. The Supreme Court reversed, noting again the Court's "unwillingness to entertain Fourth Amendment challenges based on the actual motivations of individual officers...." *Arkansas v. Sullivan,* 121 S.Ct. at 1878. The Court also made it clear that

the Arkansas Supreme Court "may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them." *Id.* (quoting *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975)) (emphasis in original). *See also Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996).

The Supreme Court's holding is, of course, binding upon this Court. "This test ... is purely objective and thus there is no requirement that an actual suspicion by the officer be shown." 4 Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment,* § 9.4(a), p. 139 (3d ed.1996). The Court in *United States v. McKie,* 951 F.2d 399, 402 (D.C.Cir.1991) phrased it succinctly: "The *Terry* [*v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] standard being one of objective reasonableness, we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious." *See also United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983) (customs officers were entitled to board vessel in navigable waters to review documents under federal statute, and the fact that they were following an informant's tip of drug activity and were accompanied by a Louisiana state policeman does not undermine that authority); *State v. Hawley,* 540 N.W.2d 390 (N.D.1995) (even though officer admitted he did not form any suspicion of criminal behavior, the automobile stop was lawful because the "reasonable-and-articulable-suspicion standard" is objective, and it does not hinge upon the subjective beliefs of the arresting officer). Indeed, even if the officer is unaware of a violation of state law at the time of the stop, the fact of such a violation may be considered by a reviewing court in determining the objective reasonableness of the stop. *State v. Vento,* 604 N.W.2d 468 (S.D.1999).

Thus we conclude that we are not limited to the belief subjectively relied upon by Officer Jennewein as the basis for the stop.

Instead, we must consider objectively all the facts known to him at that time in determining the basis for the stop.

B.  Basis for the Stop

■  As discussed above, Officer Jennewein did not have probable cause to believe a traffic violation had occurred, and therefore he had no probable cause to arrest the appellant on that basis. However, the Fourth Amendment allows a properly limited "search" or "seizure" on facts that do not constitute probable cause to arrest or to search for contraband or evidence of a crime. The Supreme Court has made it clear that "[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information" may be reasonable "seizure" under the Fourth Amendment. *Adams v. Williams,* 407 U.S. 143, 145–46, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■  These brief investigative stops may be used for persons in a moving vehicle. *United States v. Brignoni–Ponce,* 422 U.S. 873, 881, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) ("when an officer's observations lead him reasonably to suspect that a particular vehicle may contain aliens who are illegally in the country, he may stop the car briefly and investigate the circumstances that provoke suspicion"). One's expectation of privacy in an automobile and freedom in its operation are significantly different from the traditional expectation of privacy and freedom in a personal residence. *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976); *United States v. Ortiz,* 422 U.S. 891, 896 n. 2, 95 S.Ct. 2585, 45 L.Ed.2d 623 (1975). Nonetheless, a random stop of a vehicle for no reason, however brief, constitutes an unlawful seizure under the Fourth Amendment. *Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). "[O]fficers on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicles contain aliens

who may be illegally in the country." *Brignoni–Ponce,* 422 U.S. at 884, 95 S.Ct. 2574.

Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like "articulable reasons" and "founded suspicion" are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. See, *e.g., Brown v. Texas,* [443 U.S. 47,] 51 [99 S.Ct. 2637, 61 L.Ed.2d 357 (1979)]; *United States v. Brignoni–Ponce,* [422 U.S. 873,] 884 [95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)].

*United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). *See United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (reasonable suspicion requires evaluating the totality of the circumstances); *United States v. Cummins,* 920 F.2d 498, 501 (8th Cir.1990) (standard is objective reasonableness); *United States v. Wright,* 476 F.2d 1027 (5th Cir. 1973); *United States v. Bugarin–Casas,* 484 F.2d 853 (9th Cir.1973) ("founded suspicion").

Courts consider a wide variety of factors in determining whether there are articulable reasons or founded suspicion for a stop.

Any number of factors may be taken into account in deciding whether there is reasonable suspicion to stop a car in the border area. Officers may consider the characteristics of the area in which they encounter a vehicle. Its proximity to the border, the usual patterns of traffic on the particular road, and previous experience with alien traffic are all relevant. See *Carroll v. United States,* 267 U.S. 132, 159–161, 45 S.Ct. 280, 69 L.Ed. 543[ ] (1925); *United States v. Jaime–Barrios,* 494 F.2d 455 (CA9), cert. denied, 417 U.S. 972, 94 S.Ct. 3178, 41 L.Ed.2d 1143[ ] (1974). They also may consider information about recent illegal border crossings in the area. The driver's behavior may

be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion. See *United States v. Larios–Montes,* 500 F.2d 941 (CA9 1974); *Duprez v. United States,* 435 F.2d 1276 (CA9 1970). Aspects of the vehicle itself may justify suspicion.

*Brignoni–Ponce,* 422 U.S. at 884–85, 95 S.Ct. 2574.

There is a substantial body of case law discussing the kinds of facts and circumstances giving rise to a reasonable suspicion sufficient to justify a *Terry* stop. See generally 4 LaFave, *supra,* at § 9.4(f). One frequently cited factor is the subject's reaction to the presence of the police, including running away (*United States v. Wilson,* 2 F.3d 226 (7th Cir.1993)); changing direction to avoid the police (*United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985)); or trying to conceal objects or themselves (*United States v. Paleo,* 967 F.2d 7 (1st Cir.1992); *Brown v. United States,* 546 A.2d 390 (D.C.1988); *United States v. Tate,* 648 F.2d 939 (4th Cir.1981)). Another factor commonly considered is whether the individual "fits" the area in which he is found. "If the individual is of a race or economic status not ordinarily to be found in that area," it may be considered in assessing the degree of suspicion that exists. 4 LaFave, *supra,* § 9.4(f), p. 183. *See also People v. Bower,* 24 Cal.3d 638, 156 Cal.Rptr. 856, 597 P.2d 115 (1979); *Racine v. State,* 51 Ala.App. 484, 286 So.2d 890 (Ala.Crim.App.1973). Time of day is also a common factor, with the lateness of the hour often generating grounds for suspicion, depending upon the location and the activity in question. *United States v. Lender,* 985 F.2d 151 (4th Cir.1993). The nature of the area in which the suspect is found is often considered, especially in areas where illegal activity is known to occur. *United States v. Perrin,* 45 F.3d 869 (4th Cir.1995).

■ In this case, Officer Jennewein observed the appellant's automobile parked outside the home of a well-known narcotics dealer at about 0100 hours. Upon inspecting the parked car he saw Patrick AFB registration stickers. As a former Air Force security policeman he knew that the stickers meant the owner was a noncommissioned officer

assigned to Patrick AFB. He subsequently learned that the owner lived on Patrick AFB. Thus, the vehicle was "out of place." Later, at about 0130 hours, while parked in his patrol car in an area of town known for drug and prostitution activity, Officer Jennewein saw the appellant driving the vehicle. Officer Jennewein pulled his marked patrol car into traffic right behind the appellant, and within two or three seconds the appellant quickly turned off the roadway, without signaling. Considering all these factors, we conclude that a reasonable officer aware of these facts would have a lawful basis for a brief investigative stop.

■ To be reasonable under the Fourth Amendment, an investigative stop must be brief. *United States v. Place,* 462 U.S. 696, 709–10, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). There is no bright-line rule concerning the length of a "reasonable" stop-all the circumstances must be considered. *United States v. Sharpe,* 470 U.S. 675, 685–86, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The detaining officer may take the time to review the driver's license, registration certificate and proof of insurance, and run a computer check on the car and driver. *United States v. Soto,* 988 F.2d 1548, 1554 (10th Cir.1993); *United States v. Rodriguez,* 44 M.J. 766, 772 (N.M.Ct.Crim.App.1996), *set aside on other grounds,* 50 M.J. 38 (1998). In this case, after the initial stop, the appellant's apparent intoxication provided Officer Jennewein a reasonable basis to detain the appellant further. Once the appellant produced his registration that did not match his driver's license, Officer Jennewein had probable cause to believe the appellant had committed a traffic offense. When the drug-detecting dog alerted on the vehicle, the officer had probable cause to arrest the appellant for possession of narcotics. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

We conclude that Officer Jennewein's stop of the appellant's vehicle was reasonable under the circumstances. The evidence derived from the subsequent searches of the appellant and his vehicle was properly seized and admitted into evidence.

*Failure to Note the Waiver in the Action*

■ After trial, the appellant asked the convening authority to defer the automatic forfeitures under Article 57(a), UCMJ, 10 U.S.C. § 857(a), until the date of action, and to waive the automatic forfeitures under Article 58b, UCMJ, in the maximum amount for six months. The convening authority denied the request for deferment, but granted the waiver for a period of six months beginning 14 days after the date of the sentence. The waiver of forfeitures was for the purpose of an involuntary allotment in support of the appellant's family, and was ordered to be paid to the appellant's spouse directly. On 12 December 1999, the convening authority took action approving the findings and sentence. The formal action did not note the approved waiver of forfeitures. There is no evidence the appellant's spouse did not receive the monies ordered paid through the involuntary allotment.

The appellant argues that the failure to include mention of the approved waiver of forfeitures requires a new action. We disagree.

Article 58b, UCMJ, requires automatic forfeitures during periods of confinement for qualifying sentences. Subsection (b) of that provision authorizes the convening authority to waive "any and all of the forfeitures of pay and allowances ... for a period not to exceed six months." The statute does not place a time limit on the convening authority's decision, or require that it be included in the formal action approving the findings or sentence. Air Force Instruction (AFI) 51–201, *Administration of Military Justice,* ¶ 9.7.3 (3 October 1997), in effect at the time of this trial, provided that the convening authority may waive automatic forfeitures any time prior to acting on the sentence. AFI 51–201, § 9.8.4 provided that approval of a waiver "should be" memorialized in the convening authority's action. This language is permissive rather than mandatory. We conclude that the action of the convening authority is not the instrument that effects an approved waiver of automatic forfeitures, rather it is a means of memorializing the event. The failure to note the approved waiver of automatic

forfeitures in the action does not invalidate an otherwise proper action.

### Conclusion

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

SCHLEGEL, Senior Judge (dissenting in part):

I would hold that the judge erred in failing to suppress the evidence obtained from the stop and search of the appellant and his car. As a result, I would set aside the findings of guilty and dismiss Charge I and its specifications. This case turns on the Florida Supreme Court's decision in *State v. Riley*, 638 So.2d 507 (Fla.1994), Officer Jennewein's trial testimony about why he stopped the appellant, and federal case law concerning traffic stops.

The defendant in *Riley* was the passenger in a car that was stopped for failing to use a turn signal pursuant to Fla. Stat. § 316.155 (1999), which provides that:

(1) No person may turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving an appropriate signal in the manner hereinafter provided, in the event any other vehicle may be affected by the movement.

During the stop, the police discovered the defendant had some marijuana. The trial court, in suppressing the marijuana, found that the police officers, who were engaged in drug enforcement operations, had no basis to stop the car because no other cars were affected by the driver's failure to signal before turning. The Florida Supreme Court, in affirming the lower court, held,

If no other vehicle is affected by a turn from the highway, then a signal is not required by the statute. If a signal is not required, then a traffic stop predicated on failure to use a turn signal is illegal and any evidence obtained as a result of that stop must be suppressed.

*Id.* at 508. While I disagree with the Florida Supreme Court's interpretation of the plain meaning of that paragraph of the statute, they are the ultimate authority on the scope and construction of their own state statutes. *United States v. Allen*, 27 M.J. 234, 238 (C.M.A.1988).

In the case sub judice, Officer Jennewein testified that his probable cause for the stop was the appellant's turn without signaling. Officer Jennewein said there was moderate traffic on the street that night, including men cruising through the area in their cars looking for prostitutes. However, he could not say that any other vehicle was affected by the appellant's turn, including his own.

"The Fourth Amendment requires that searches and seizures be reasonable. A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) (citing *Chandler v. Miller*, 520 U.S. 305, 308, 117 S.Ct. 1295, 137 L.Ed.2d 513 (1997)); *United States v. McCarthy*, 38 M.J. 398, 402 (C.M.A.1993) (citing *United States v. Thatcher*, 28 M.J. 20, 22 (C.M.A.1989) and *United States v. Middleton*, 10 M.J. 123, 127 (C.M.A.1981)). The decision to stop a motorist is reasonable when a law enforcement officer has probable cause to believe that a traffic violation has occurred. *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam). The actual motivation of a law enforcement officer who detains a motorist based on probable cause is irrelevant. *Whren v. United States*, 517 U.S. 806, 810–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The rule articulated by the Supreme Court in *Whren* provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded.

*United States v. Miller*, 146 F.3d 274, 279 (5th Cir.1998). *See also United States v. Lopez–Soto*, 205 F.3d 1101 (9th Cir.2000);

*United States v. Lopez–Valdez,* 178 F.3d 282 (5th Cir.1999).

In *Miller,* the accused drove his motor home through an intersection with his left turn signal on, without turning or changing lanes. A deputy sheriff stopped him for the purpose of issuing a warning citation for improper use of the turn signal pursuant to Tex. Transp. Code § 547.305(c) (Vernon Supp.1997). During the stop, the accused consented to the warrantless search of his vehicle and the police found marijuana. The District Court denied defendant's motion to suppress the evidence, and he was convicted of possession of marijuana with intent to distribute. The Court of Appeals for the Fifth Circuit held that the lower court erred in admitting the marijuana into evidence because it found that flashing a turn signal without turning or changing lanes was not a violation of Texas law. As a result, there was no probable cause for the stop.

In *Lopez–Soto,* the accused was stopped by a San Diego police officer while driving a car that displayed license plates from Baja California, Mexico. The police officer conducted the stop because he mistakenly believed that Baja California required motorists to affix a visible registration sticker on the rear of the car. During the stop, the officer discovered 400 kilograms of marijuana in the car. The District Court denied defendant's motion to suppress the evidence and the accused entered a conditional plea of guilty to possession of the marijuana with the intent to distribute. In reversing the accused's conviction, the Court of Appeals for the 9th Circuit found that even though the defendant's vehicle had no valid registration sticker, the officer's mistaken understanding of the law did not provide an objectively reasonable basis for the stop.

In *Lopez–Valdez,* the accused was driving on a public highway in Texas near the Mexican border. Traveling in the opposite direction, a Texas state trooper and a border patrol agent noticed her car had numerous passengers. They suspected that she was smuggling aliens. When the trooper looked in his rearview mirror, he saw the accused's brake lights come on and noticed a hole in the right taillight. The trooper decided to stop the accused because he believed that a broken taillight constituted a traffic infraction. After the stop, the trooper and agent discovered that most of the passengers were illegal aliens. The accused unsuccessfully sought to suppress this evidence and was convicted of willfully transporting illegal aliens. On appeal she argued that the trooper and agent lacked reasonable suspicion and probable cause for the stop. The Court of Appeals for the Fifth Circuit agreed with her and found that the presence of people in the car alone did not raise a reasonable suspicion of wrongdoing and that under Texas law a broken taillight did not justify a traffic stop. The court held that the stop of the accused's car also did not pass muster under the good faith exception to the exclusionary rule.

Like the other police officers in the cited cases, Officer Jennewein was mistaken about the law. As a result, the stop of the appellant was not objectively grounded in the law. The majority holds that despite this disconnect, the stop was still permissible based upon reasonable suspicion. I agree that a traffic stop may be based on reasonable suspicion. However, a stop under this theory must be based upon observations that the person stopped has committed, is committing, or is about to commit a crime. *See Lopez–Soto,* 205 F.3d at 1104 (citing *Berkemer v. McCarty,* 468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

Officer Jennewein testified that shortly after midnight, he was on routine patrol for suspicious persons in a high crime area of Melbourne, Florida. He spotted the appellant's car parked in a dirt lot next to the home of a "convicted felon, crack user and small, middle dealer. He sells a lot of cocaine to the prostitutes." Officer Jennewein ran the license plate number and discovered the car was registered to an address on Patrick Air Force Base (AFB), Florida. He examined the car and found Patrick AFB stickers indicating the owner was a noncommissioned officer. Officer Jennewein testified he parked across the street to see if anybody came to the car "so I could check, you know, it could have been a military spouse, their children, something like that, down here in the drug area. And it's not a kosher place for a member or a family mem-

ber to be." (Before becoming a police officer for the city of Melbourne, Officer Jennewein had been an Air Force security policeman, stationed at Patrick AFB.) After waiting for 10 or 15 minutes for someone to return to the car, Officer Jennewein was called away to another area. Later, while sitting in his patrol car in a parking lot, some distance from where he originally noticed the appellant's car, watching people and cars, he saw the car drive by. Officer Jennewein pulled onto the street approximately 150 feèt behind the appellant's vehicle. Almost simultaneously, the appellant made a right turn into an alley. Officer Jennewein initiated a traffic stop of the appellant because he failed to signal for the turn.

In my opinion, these facts are insufficient to justify a stop based upon reasonable suspicion that criminal activity was afoot. Initially, there was nothing distinctive about the car except that it was parked near public housing in a high crime area of the city. It was close to the home of a convicted felon who sold cocaine to prostitutes. Officer Jennewein learned that the car was registered to a noncommissioned officer stationed at Patrick AFB. However, he never saw anyone from the car enter or exit the felon's home. No individual was seen using or possessing cocaine or drinking alcohol before operating the car. In fact, but for Officer Jennewein's misunderstanding about traffic laws in the state of Florida, he never observed the car being operated in an unlawful manner.

Under the majority's theory, Officer Jennewein would have been justified stopping any car parked near the felon's house or operating in that high crime area early in the morning. I would hold that Officer Jennewein violated the Fourth Amendment when he stopped the appellant and that the evidence obtained as a result of the stop should have been suppressed by the judge. *See Wong Sun v. United States*, 371 U.S. at 484–85, 83 S.Ct. 407. Since all of the evidence concerning the drug offenses was obtained or derived from the stop, I would set aside and dismiss Charge I and its specifications.