BAKER, Judge
(dissenting):
I agree with the majority that an officer would have reasonable suspicion to justify an investigative stop of a vehicle where the totality of circumstances indicated that a vehicle had been parked briefly in the early morning hours in the driveway of a house known to be used for drug dealing, and that it was thereafter driven in a manner indicative of impaired driving. However, because I do not believe the facts articulated on the record in this case support such a conclusion, I respectfully dissent. In light of the factual deficiencies in this case, I need not address Judge Erdmann’s fair concern regarding whether an appellate court could justify an investigatory stop on grounds of reasonable suspicion where the officer’s articulated reason for the stop was a mistaken belief that Appellant had violated the law.
My analysis begins with United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), in which the Supreme Court expanded on Terry stating:
In Terry v. Ohio, we held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity “may be afoot,” even if the officer lacks probable cause.
The officer, of course, must be able to articulate something more than an “inchoate and unparticularized suspicion or *438 ‘hunch.’” The Fourth Amendment requires “some minimal level of objective justification” for making the stop.
Id. at 7, 88 S.Ct. 1868 (citations omitted). Thus, reasonable suspicion includes both subjective and objective components — an officer’s reasonable suspicion based on articulable facts objectively reviewed.*
In my view, the Fourth Amendment analysis in this case hinges on Officer Jennewein’s articulation of two factual questions: where was Appellant’s car parked and did Appellant drive his car in an impaired manner?
First, in what manner was Appellant’s car “at” the house of a known drug dealer, IL? Was it parked in the driveway, on the street specifically in a manner associated with IL’s house or on the street as any other car might have been? Officer Jennewein’s testimony is not clear on this point. Appellant’s car is characterized at various points in the record as “in front of,” “at Steele [St.] and Mathers,” “at [IL]’s,” “over at [IL]’s,” “at a house,” and “right next to his house in his dirt driveway or dirt lot.” In an urban environment the factual distinction between parking on the street or in a driveway can reflect the difference between particularized suspicion and inchoate suspicion. In the abstract, there is a significant difference between being parked in a “bad crime” driveway, and being parked in a “bad crime” neighborhood, which the Supreme Court has held, does not in itself provide reasonable suspicion to justify an investigative stop. Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Nor did the Government move this testimony from the abstract to the specific by either reconciling the different testimonial statements regarding the location of Appellant’s car or by showing with a map or photograph where Appellant’s car was parked, thereby indicating how parking on the street necessarily connected Appellant’s car with IL’s house. The Government also did not clarify this discrepancy at oral argument, despite persistent questioning from the judges. Moreover, the record does not provide a sufficient factual basis to otherwise infer suspicion from street parking alone.
Second, did Appellant demonstrate indicia of impaired driving and did Officer Jennewein articulate suspected impairment as a basis for stopping Appellant? Here too, the record is amorphous. This may reflect the fact that the Fourth Amendment search was argued at trial under the probable cause rubric based on Appellant’s (lawful) failure to signal. On appeal, the Government now finds itself arguing an alternative, less developed, theory of reasonable suspicion.
On the one hand, impairment is certainly in the air at the appellate level. Officer Jennewein testified about his training in identifying impaired drivers. Officer Jennewein testified that the failure to signal a turn and other kinds of conduct such as “accelerating, decelerating, swerving in an *439 other lane of traffic, wide turn, failure to signal, reckless driving, driving without headlights, [and] erratic braking[,]” are factors suggestive of impaired driving. Officer Jennewein also testified that he would not have followed Appellant’s vehicle if he had not previously seen the vehicle parked in some manner adjacent to IL’s house.
On the other hand, Officer Jennewein, never fully delivers the punch line by expressly stating that he stopped Appellant’s ear on account of his suspicion that the driver was impaired. Moreover, on three separate occasions he testified that the sole reason he stopped the vehicle was failure to properly use the turn signal. Such language does not preclude the possibility that Officer Jennewein was motivated by a concern over impaired driving — the failure to signal being merely the final indicator of impairment— but neither is it a clear articulation of reasonable suspicion of impairment as the predicate for Appellant’s stop.
Significantly, the military judge found that the officer “initiated” his stop of the car because Appellant failed to signal properly. The military judge, having heard the testimony of the officer regarding his training, could have found suspected impairment as part of the officer’s reasons for stopping Appellant’s vehicle, but she chose not to make such a finding. For sure, the military judge may have omitted such a finding because she found it unnecessary given her conclusions that probable cause existed for violation of the statute. However, determining whether the military judge rejected the finding of impairment or simply found it unnecessary to reach would be appellate speculation.
In the absence of probable cause for failure to signal, the Government was left on appeal to stand on two factual legs of a reasonable suspicion ladder: the presence of Appellant’s vehicle adjacent to a known drug dealer’s house and indicia of impaired driving. Neither leg was clearly articulated in the record of trial. In my view, when the uncertainties in both legs are considered together, the record does not move from an inchoate to a particularized showing of suspicion required by the Terry/Sokolow line of cases. Something more particularized than the presence on a street with a house used for drug dealing and bad, but lawful driving, must be articulated to warrant an investigafive stop. The Government might have articulated additional relevant facts at trial if it had known its ultimate appellate posture, but that is not the record we have on appeal.

 This case is different from Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In Whren, the issue was whether a court should look beyond an officer’s articulated reasons for making an investigatory stop in determining whether reasonable suspicion existed for the stop. Whren did not address the question posed here: whether an investigative stop can be upheld under the Fourth Amendment if an objective review of the record supported a finding of reasonable suspicion, despite the fact that the officer did not articulate those reasons as the basis for the stop and the articulated basis for the stop was unreasonable.
The Court of Criminal Appeals applied a purely objective standard of reasonableness in determining that Officer Jennewein had reasonable suspicion to stop Appellant, based on language in Whren indicating that "[sjubjective intentions play no role in ordinary, probable cause Fourth Amendment analysis.” United States v. Robinson, 56 M.J. 541, 545 (A.F.Ct.Crim.App.2001)(citing Whren, 517 U.S. at 813, 116 S.Ct. 1769). The court looked at all the facts available to Officer Jennewein and concluded that "a reasonable officer aware of these facts would have a lawful basis for a brief investigative stop.” Id. at 548. However, this approach mischaracterizes the holding of Whren. Whren did not alter the fundamental requirement that officers conducting investigative stops must articulate facts that support reasonable suspicion. If officers were not required to articulate some basis for the stop, courts would be left to ”speculat[e] about the hypothetical reaction of a hypothetical constable,” an approach rejected by the Supreme Court in Whren as unworkable. Whren, 517 U.S. at 815, 116 S.Ct. 1769.