ERDMANN, Judge
(dissenting):
I agree with the majority’s initial finding that Officer Jennewein lacked probable cause to initiate a traffic stop of Appellant’s car, based on his mistaken belief that a traffic violation had occurred. In affirming the Air Force Court of Criminal Appeals, however, the majority goes on to find that the detaining officer had reasonable suspicion to justify an investigatory stop of Appellant’s vehicle, i.e., “reasonable suspicion” that the occupants were engaged in wrongdoing. I dissent from both the analysis utilized by the majority and from the finding that the facts known to the officer at the time of the stop rose to the level of reasonable suspicion. I would reverse the Air Force Court of Criminal Appeals.
The initial traffic stop in this case was made by Officer Jennewein solely because Appellant failed to signal when he turned his car into an alley. After the stop a canine unit called by Officer Jennewein alerted on the car and following a consensual search, cocaine was discovered. Appellant was subsequently charged with possession and use of cocaine, amongst other charges. At a proceeding pursuant to Article 39, Uniform Code of Military Justice, 10 U.S.C. § 839 (2000), Appellant contested the admission of the seized evidence, arguing that the initial stop was in violation of the Fourth Amendment. The military judge found no Fourth Amendment violation, ruling that Officer Jennewein had probable cause to stop Appellant for a traffic violation. Appellant subsequently entered a conditional plea of guilty to the possession and use of cocaine specifications.
The Air Force Court of Criminal Appeals found that under Florida law there was no probable cause to believe that a traffic viola *440 tion had occurred, which rendered the stop in violation of the Fourth Amendment. The lower court rejected, however, Appellant’s argument that the evidence derived from the stop must be suppressed. Seeking an alternative basis to uphold the initial stop under the Fourth Amendment, the Air Force court went on to “determine whether there is some other basis in the law for the stop and the resulting searches that led to the evidence of the use and possession of cocaine.” United States v. Robinson, 56 M.J. 541, 544 (A.F.Ct. Crim.App.2001). A divided Air Force Court found that, despite the initial illegal stop based on the traffic violation, the stop was reasonable under the circumstances and the evidence was admissible.
Because Officer Jennewein testified that he made the stop based only on the suspected traffic violation, the Air Force Court adopted an analysis that allowed them to move beyond the officer’s stated reason for the stop and determine whether a “reasonable officer” would have had “reasonable suspicion” for the stop. The lower court relied on Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), for the proposition that the subjective intentions of the detaining officer are irrelevant to a Fourth Amendment analysis. In my view, Whren is inapposite and provides no basis for seeking an alternate finding of reasonableness after an invalid or unlawful traffic stop. The majority opinion suffers this same delict: there is no transitional analysis supporting an appellate court’s authority to search for some other basis to uphold the stop after determining that the only articulated, record basis for the stop was unlawful.
As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[1] Whren, 517 U.S. at 810, 116 S.Ct. 1769. It is important to note that the Court in Whren was dealing with a case where the legality of the initial stop was not in question and in fact was not even challenged on appeal. In Whren District of Columbia police became suspicious of the defendant’s car due to its temporary license plates, youthful occupants and the fact that the driver remained stopped at an intersection for what seemed to be an unusually long time while looking down into the lap of the passenger.[2] The police then observed the car turn suddenly without signaling and drive off at an “unreasonable” speed, activity that constituted valid traffic violations. The police executed a stop based on the traffic violations and observed two large plastic sacks of crack cocaine in Whren’s hands.
The defendants argued that the police did not have probable cause or even reasonable suspicion to believe that they were engaged in an illegal drug activity and that the officer’s asserted ground for the stop — to give the driver a warning concerning the traffic violations — was pretextual.[3] The Supreme Court found that the subjective intent of the officers does not play a role in an ordinary probable cause Fourth Amendment analysis. The Sixth Circuit later described Whren as holding that “an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle.” United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999), cert, denied, 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000).
*441 The Supreme Court in Whren quoted Scott v. United States, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), for the principle that “subjective intent alone ... does not make otherwise lawful conduct illegal or unconstitutional.” 517 U.S. at 813, 116 S.Ct. 1769 (emphasis added). Whren simply stands for the principle that an officer may legally stop a vehicle after observing suspicious behavior that does not rise to the level of “reasonable suspicion,” as long as there is probable cause to believe there has been a traffic violation.
If failing to signal a turn under the circumstances presented in this case had in fact been a valid traffic violation in Florida,[4] then the fact that the officer’s real motivation for the stop may have been suspicion of drug activity would not have invalidated the seizure or subsequent search as the officer would have had probable cause to make the traffic stop. Those, however, are not the facts of this case. There is no dispute that Florida law does not prohibit a turn without signaling under the circumstances found here and that Officer Jennewein made the stop based on a mistake of law.
In United States v. Miller, 146 F.3d 274 (5th Cir.1998), police stopped the defendant after he drove his motor home through an intersection with his turn signal on, without changing lanes or turning. The police found marijuana in the motor home as the result of a subsequent consensual search, but it was later determined that flashing a turn signal without turning or changing lanes was not a violation of Texas law. In finding that the evidence was not admissible, the Fifth Circuit stated:
The rule articulated by the Supreme Court in Whren provides law enforcement officers broad leeway to conduct searches and seizures regardless of whether their subjective intent corresponds to the legal justifications for their actions. But the flip side of that leeway is that the legal justification must be objectively grounded. See Whren, 116 S.Ct. at 1774; see also Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir.1998)(“So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment.” (emphasis added)). Here, given that having a turn signal on is not a violation of Texas law, no objective basis for probable cause justified the stop of Miller.
146 F.3d at 279 (footnote omitted).
In United States v. Lopez-Valdez, 178 F.3d 282 (5th Cir.1999), the Fifth Circuit again addressed this area where an officer mistakenly stopped a car for an improper taillight. Although the officer thought in good faith that the broken taillight constituted a traffic infraction the court held that there was no probable cause for the stop. The government argued that the drugs seized as a result of the stop should be admitted under the good-faith exception to the exclusionary rule, but the Court disagreed:
Under the general rule established in Whren, a traffic infraction can justify a stop even where the police officer made the stop for a reason other than the occurrence of the traffic infraction. See Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir.1998). But if officers are allowed to stop vehicles based upon their subjective belief that traffic laws have been violated even where no such violation has, in fact, occurred, the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive. Accordingly, we hold that [the officer’s] actions do not pass muster under the good-faith exception to the exclusionary rule.
178 F.3d at 289.
In United States v. Mariscal, 285 F.3d 1127 (9th Cir.2002), a case remarkably similar to the underlying facts of this case, police were conducting an undercover surveillance of a residence and a vehicle parked at the *442 residence. They observed the car pull away from the house and make a right turn without using mechanical or hand signals. A traffic stop was made based on the failure to signal a turn. A subsequent search of the car revealed a concealed weapon and one of the occupants admitted that the gun was his and that he was in the country illegally. Relying on a long line of Ninth Circuit authority, the court stated:
If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable. The chimera created by his imaginings cannot be used against the driver. So, when an officer thought that a Baja California vehicle registration statement had to be visible from the rear, whereas the Baja California law required that it be on the upper right corner of the windshield, the officer’s mistaken belief could not “justify the stop under the Fourth Amendment.” Lopez-Soto, 205 F.3d at 1106. Similarly, when an officer thought that Michigan required cars to have two license plates, but it indeed only required one, a stop based on the two-plate theory was not based on reasonable suspicion. Twilley, 222 F.3d at 1096. Simply put:
A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because “the legal justification [for a traffic stop] must be objectively grounded.” In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.
Id. (citations omitted); see also United States v. King, 244 F.3d 736, 741-42 (9th Cir.2001)(a mistaken belief that a driver’s conduct violated the law could not support a reasonable suspicion that a crime had been committed, even if the officer otherwise behaved reasonably).
285 F.3d at 1130.
While it is clear under Whren that evidence seized as the result of a pretextual, although otherwise legal, traffic stop is admissible, the issue here is whether Whren provides authority for an appellate court to uphold admitting evidence seized subsequent to an illegal traffic stop on the basis that the stop was a lawful investigative stop based on reasonable suspicion. Clearly it does not. The general rule is that if an initial stop violates the Fourth Amendment, the evidence seized as a result of the stop is subject to suppression. United States v. Childs, 256 F.3d 559 (7th Cir.2001).
Although the majority opinion does not provide the legal basis for their analytical transition from the initial illegal stop to the “reasonable suspicion” review, the danger in both its approach and that of the Air Force Court is that an officer can use an illegal traffic stop with impunity as long as an alternative theory for admissibility of the evidence can later be developed. As noted in Lopez-Valdez, 178 F.3d at 289, if a subjective but mistaken belief that a traffic violation has occurred is all that is required, “the potential for abuse of traffic infractions as pretext for effecting stops seems boundless and the costs to privacy rights excessive.” Further, once the illegal traffic stop is made there is a natural tendency to utilize the events and evidence discovered after the stop to justify the initial stop, as evidenced by the extent to which those facts are exhaustively discussed the decisions of both Court of Criminal Appeals and the majority opinion.
There is something troubling about a concept where the initial police action violates the Fourth Amendment but an appellate court later develops a theory which allows the admission of the evidence. In upholding the admission of evidence seized subsequent to an illegal traffic stop on the basis that the stop was a lawful investigative stop based on reasonable suspicion, the majority extends that concept further than any reported court decision. I would hold that under the Fourth Amendment the admission of the evidence is not allowable and would reverse the court below on that basis.
However, even if the traditional analysis were applicable to this situation, I would find a lack of “reasonable suspicion.” Absent a warrant or probable cause to believe that an occupant has committed or is committing a *443 crime, including a traffic violation, a law enforcement officer may lawfully stop a vehicle when the officer has a reasonable, articulable suspicion that criminal activity is afoot involving the vehicle. An “officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.” Illinois v. Wardlow, 528 U.S. 119, 123-24, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)(quoting Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)(internal quotation marks omitted)).
The majority sets forth three grounds in support of their finding of “reasonable suspicion:”

Appellant was twice seen by Officer Jennewein in high crime areas at an unusual time.

Actually, Appellant was not seen twice by Officer Jennewein. The officer initially noticed a parked maroon four-door Oldsmobile that was registered to the Appellant. However, he did not see the Appellant or anyone else in the car and he had no idea who was driving the car. The record is unclear as to where the car was parked, other than the fact that it was parked in the vicinity of a “known crack-house.”
At the Article 39(a) hearing, Officer Jennewein testified inconsistently as to exactly where the car was parked — and this is a critical element for the Government to establish in the “reasonable suspicion” analysis. If the car was legally parked on a public street, then it would be less suspicious than if it were parked “next to” or “in the driveway” of a known crack house. On two occasions Officer Jennewein testified that the car was parked “in front” of the house and three times he simply stated the vehicle was “at” the house. On a single occasion he testified that the car was parked “right next” to the house in the “dirt driveway or dirt lot.” There is no reason to believe that Officer Jennewein’s single assertion that the car was parked next to the house is any more believable than his multiple assertions that it was parked in front of or at the house. The Air Force court found only that the ear was “parked outside the home.” Robinson, 56 M.J. at 547. The parties stipulated later as part of the conditional plea that Appellant’s car was “parked on Steele Street.”
The second time Officer Jennewein observed the car, Appellant was driving down the public street in a legal manner. The officer had not seen Appellant in the “known crack house” nor had he seen him with any known criminals or drug dealers.

Appellant’s vehicle, owned by an Air Force noncommissioned officer who lived on Patrick AFB, was out of place.

The fact that a vehicle or individual is located in a high crime area is not, in itself, evidence of illegal conduct.[5] Further, the fact that the vehicle was registered to an Air Force noncommissioned officer adds little to a “reasonable suspicion” analysis. Officer Jennewein’s testimony that “it’s not a kosher place for a [military] member or a family member to be” leads to the conclusion that it may be a kosher place for an individual who is not a member of the military. Military members come from all socio-economic backgrounds and may well have valid reasons to visit family and friends in what are characterized as “high crime areas.” It is completely inappropriate to categorize military members as a “class” deserving higher attention or suspicion from the police.
As soon as Officer Jennewein pulled out behind the Appellant’s vehicle, the Appellant made a sudden turn into an unpaved alley. Even if the turn was not illegal under Florida law, it was (1) evasive, (2) an indicator of impaired driving, and (3) unusual because it was a sudden turn onto an unpaved alley that was not a customary roadway.
Officer Jennewein testified that once he saw the four-door maroon Oldsmobile drive by he “pulled out and as soon as [he] pulled out, [he] got right behind it and the individual pulled into an alley which is between Gua *444 va and Avocado [Streets] and he failed to signal.” Officer Jennewein clarified, however, that the distance between his vehicle and Appellant’s was 150 feet. While Officer Jennewein initially stated that the Appellant “slammed on” his brakes when he pulled his police cruiser into the street, he corrected himself and testified that the Appellant “decelerated and stepped on the brake pedal and abruptly turned right into the alleyway.” The Air Force court determined only that “within two or three seconds that [A]ppellant quickly turned off the roadway, without signaling.” Robinson, 56 M.J. at 548. While certain conduct that constitutes flight or avoidance of police is suggestive of wrongdoing,[6] individuals driving in a normal, lawful manner have not been considered to be evasive.[7] At no time did Officer Jennewein testify that Appellant tried to evade him, speed away, or do anything other than turn suddenly into an alley and then stop after the officer turned his emergency lights on.
Impaired driving is simply not a reasonable conclusion to be drawn from these facts. Absent an underlying traffic offense, the mere failure to use a turn signal is not indicative of criminal activity being afoot, including impaired driving. Where the law does not mandate the use of the turn signal in the first place, the wholly lawful act of turning without using the signal bears no reasonable relationship to a lapse of judgment indicative of impaired driving. The record makes clear that Officer Jennewein did not perceive impairment as a basis for his actions at the time this stop was actually made and it was not found as a basis for the stop by the military judge or the Court of Criminal Appeals.
The majority engages in speculation when it states that the alley into which Appellant turned was not “customarily” used as a roadway. This alley was not a short dead-end; it was a through alley connecting two streets in the area of an apartment building. According to Officer Jennewein, the alley “was used by all the residents.” A reasonable, if not the sole, purpose of this alley is vehicular traffic.[8]

“Reasonable Suspicion”

“Reasonable suspicion” is “a particularized and objective basis” for suspecting the person stopped of criminal activity. Orrnelas-Ledesma v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). “Reasonable suspicion” is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity. United States v. Twilley 222 F.3d 1092, 1096 (9th Cir.2000).
The pre-stop specific, articulable facts in this case simply do not constitute “reasonable suspicion.” Although recognizing that a Fourth Amendment analysis of reasonable suspicion is objective and viewed through the eyes of the reasonable officer, the Supreme Court has also held that reviewing courts should look to the specialized training and experience of the detaining officer to make inferences that might elude an untrained person.[9] This analysis cuts both ways, and here it is important to note that none of the reasons cited by the majority rose to a level that Officer Jennewein, with his specialized training and experience, considered sufficient to rely upon as a basis for a “reasonable suspicion” stop. Rather, Officer Jennewein testified repeatedly that the only basis for the stop was his belief that a traffic violation had occurred. The majority is then left with the difficult task of constructing a basis for “reasonable suspicion” where the detaining *445 officer articulated the grounds relied upon by the majority and found them lacking.
The weight of evidence in the record indicates that Appellant’s car was legally parked on a public street in a high crime area. Appellant was not seen in the area of the crack house, nor was he seen going into or out of the house. The presence of his car in this location does not create a nexus between him and criminal drug activity. While Appellant’s military status seemed to have struck a chord with Officer Jennewein, from an objective standpoint it does not create or increase the level of suspicion. Assuming that it was unusual for a car to be parked in that area, then it should be no more unusual if the car is owned by a military member or by a civilian.
The fact that Officer Jennewein later saw the car driving down the street does not add any additional cause for suspicion. The car had been earlier seen parked in the area and it is logical that at some point it would be driven to another location. Under these circumstances the legal movement of a vehicle on a public street does not provide any additional basis for “reasonable suspicion.” Finally, Appellant made a legal turn into an alley. While Officer Jennewein and the majority characterize the turn as “sudden,” Appellant didn’t slam on his brakes, drive in an erratic fashion or do anything else that would bring attention to him — other than failing to turn on his turn signal. In fact, in a matter of three to four seconds, Officer Jennewein covered the 150 foot distance between his vehicle and Appellant’s, and followed Appellant through the turn before effecting the stop.
Under the rationale adopted by the majority the following facts would constitute “reasonable suspicion” that the car was involved in illegal drug activity or that the driver was impaired: a car owned by military member was seen parked in a high crime area late at night in the vicinity of a known crack house; the car was later seen driving down a public street and turning into an alley in a sudden but legal manner.

Conclusion

The initial stop for a traffic offense was invalid and violated the Fourth Amendment. I would hold the evidence should have been suppressed and reverse the Air Force Court of Criminal Appeals on that basis. Even if I engaged in a traditional reasonable suspicion analysis, unembellished by what transpired after the illegal stop, these facts do not rise to the level of “reasonable suspicion” and the evidence should have been suppressed.

. The cases in this area reference both the “probable cause” standard and "reasonable suspicion” standard. In this context the "probable cause” standard is applied when the officer has reason to believe that an offense has occurred while the "reasonable suspicion” standard is generally applied when the officer believes that criminal activity “may be afoot.”

. It is difficult to conclude that these facts, standing alone, would rise to the level of "reasonable suspicion” that criminal activity is afoot.

. On appeal the defendants did not dispute that the traffic violations constituted probable cause to support the stop. Rather, they argued that, "in the unique context of civil traffic regulations,” probable cause was not enough. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Specifically they argued that a higher standard was required to deter the pretextual use of traffic stops as a means of investigating other violations of the law as to which no probable cause or even articulable suspicion exists. Id.

. There is no evidence in this case that Officer Jennewein made the stop based upon a suspicion of illegal drug activity. He testified conclusively that the only reason for the stop was the traffic violation.

. Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); United States v. Basey, 816 F.2d 980, 989 (5th Cir.1987); United States v. Davis, 94 F.3d 1465, 1470 (10th Cir.1996); United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir.1997); United States v. Green, 111 F.3d 515, 520 (7th Cir.1997), cert, denied, 522 U.S. 973, 118 S.Ct. 427, 139 L.Ed.2d 328 (1997).

. United States v. Raibley, 243 F.3d 1069 (7th Cir.2001); United States v. Elkins, 70 F.3d 81 (10th Cir.1995); Commonwealth v. Grandison, 433 Mass. 135, 741 N.E.2d 25 (2001); State v. Vadnais, 141 N.H. 68, 677 A.2d 155 (1996).

. Sprinkle, 106 F.3d at 617-18; State v. Haviland, 532 N.W.2d 767 (Iowa 1995).

. Interestingly, after the stop Officer Jennewein discovered that the passenger in Appellant’s car lived "right there on Avacado [Street].” To an experienced officer familiar with the area, a turn at this point to drop off a passenger or visit a resident of the apartment building would be usual and “customary.”

. United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002).