STATE of Iowa, Appellant,

v.

Orman Daniel STEVENS, Appellee.

No. 85–1130.

Supreme Court of Iowa.

Oct. 15, 1986.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and Allan W. Vander Hart, Co. Atty., for appellant.

Charles L. Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for appellee.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER, and LAVORATO, JJ.

LAVORATO, Justice.

We granted the State's application for discretionary review, *see* Iowa Code § 814.-5(2)(*b*); Iowa R.Crim.P. 11(2), of the district court's order partially sustaining a motion to suppress, *see* Iowa R.Crim.P. 11(1). The district court concluded certain evidence obtained by a police officer in a warrantless patdown search of defendant Orman Daniel Stevens could not be admitted at trial. It reasoned the search could not be upheld as one incident to arrest. Our review is de novo. *See State v. Lamp,* 322 N.W.2d 48, 50 (Iowa 1982). We reverse the judgment of the district court, and remand.

The Fairbank Chief of Police, Donald Becker, was on patrol in his squad car during the early morning hours of January 9, 1985. At approximately 1:40 a.m., he was flagged down by a woman in a car. He stopped his car, and recognized Vickie Kaufman, a resident of Fairbank. She informed him that while socializing with friends in the Hideaway Tavern she was told a bar patron with long, dark hair had had a gun fall from his black jacket, which had a "Harley Davidson" emblem on its back. She added that this man's companion was Michael Bishop.

Chief Becker requested assistance over his radio, then drove near the Hideaway for surveillance. Twenty minutes after their first meeting, Chief Becker again met Kaufman, who had since returned to the Hideaway. She informed him that Bishop and his companion were still there.

At about 2:00 a.m., Chief Becker saw two men leave the Hideaway and walk across the street toward the North Forum, a tavern owned by Bishop. Chief Becker believed them to be Bishop, whom he knew, and the companion described by Kaufman. Shortly thereafter he drove his squad car down an alley next to the North Forum. In the gravel parking lot adjacent to the North Forum tavern, Chief Becker saw a parked car with its engine running. An individual was seated in the front passenger seat.

Chief Becker recognized the defendant as the passenger, who also appeared to be the person described as Bishop's companion. Chief Becker went to the car and spoke to the defendant through the driver's window, which was rolled down. He asked, "Where's Mike?" The defendant "didn't give a complete sentence" in reply: "He never stated anything in words. He just mumbled." Although Chief Becker

did not smell alcohol, he believed the defendant was intoxicated because of his response and "slumping down" appearance.

At this time Bishop, who had entered the North Forum to pick up his bank bag, returned to its parking lot. Chief Becker asked him where he had been earlier in the evening, and Bishop replied he and the defendant had been drinking in the Hideaway. Chief Becker detected an odor of alcohol on Bishop's breath and believed he was intoxicated.

Chief Becker told Bishop to "wait here," then returned to his squad car. Over his radio he said he had an intoxicated person and wanted to know whether or not to arrest him.

After using his radio, Chief Becker asked Bishop to step out of the car. Three officers then arrived at the parking lot. Chief Becker asked Bishop some more questions about the evening; Bishop replied he and the defendant had consumed six or seven drinks each.

Chief Becker went to see the defendant, who was still in the car. Looking through the passenger window, he could not tell whether the defendant was "asleep or passed out," but he was able to get the defendant's attention. The defendant rolled down the window and asked, "What's the matter?" Chief Becker asked him to get out of the car; when the defendant did, he staggered one or two steps. Chief Becker, who smelled alcohol on the defendant's breath, supported him for balance. Dexterity tests were explained to the defendant, who replied in slurred speech that he understood them. The defendant, however, lost his balance in performing them.

Chief Becker then arrested the defendant for public intoxication. *See* Iowa Code § 123.46 (1983). A patdown search of the defendant produced a knife and a case containing two glass vials of powder, a tube, a flat stone, a spoon, and a razor blade. The powder was later identified as cocaine.

Chief Becker went to speak with the officer who was examining Bishop for intoxication. When asked where the gun was located, Bishop replied he was not aware of any gun and consented to a search of his car. A loaded .38 caliber derringer pistol was found under the passenger seat.

The defendant was later charged with possession of a controlled substance, *see* Iowa Code § 204.401(3); *see also* Iowa Code § 204.206(2)(*d*)(1) (cocaine defined as a controlled substance), and carrying dangerous weapons, *see* Iowa Code § 724.4; *see also* Iowa Code § 702.7 (dangerous weapons include firearms, and knives with blades three inches or longer). He sought to suppress any evidence seized in the searches, and after a hearing the district court held that only the derringer could be admitted at trial. The court reasoned the cocaine and knife could not be admitted because Chief Becker did not have reasonable cause to stop the defendant to investigate for public intoxication. Thus, this evidence could not be properly seized in a search incident to the arrest.[1] The State now argues the district court erred in this holding.

■ The constitutional protections against unreasonable searches are triggered by the seizure of a person. *State v. Harlan*, 301 N.W.2d 717, 719 (Iowa 1981). A seizure occurs when a police officer, by means of physical force or show of authority, has in some way restrained the person's liberty. *Id.* It includes the threatening presence of officers, or the use of language or tone of voice indicating compliance might be compelled. *Id.* at 719–20. When a motor vehicle is stopped by a police officer, a seizure of all its occupants occurs because their freedom of movement is equally affected. *State v. Eis*, 348 N.W.2d 224, 226 (Iowa 1984).

■ In this case the defendant was seized when Chief Becker commanded

---

1. A search incident to a valid arrest is an exception to the warrant requirements in U.S. Const. amend. IV and Iowa Const. art. I, § 8. *See* *State v. Shane*, 255 N.W.2d 324, 326 (Iowa 1977); *State v. Findlay*, 259 Iowa 733, 739, 145 N.W.2d 650, 654 (1966).

Bishop to "wait here," because this order clearly applied to the defendant as well as Bishop. The question is whether Chief Becker had a reasonable cause to believe the defendant was intoxicated at the time of this order.

■ The Supreme Court has stated its decision in *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906–07 (1968) recognized

that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–17 (1972) (citations omitted). To justify an investigatory stop, the officer must have reasonable cause to believe a crime may have occurred. *See State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982). The test of reasonable cause for an investigatory stop is not the officer's subjective theory, but whether "articulable objective facts were available to the officer to justify the stop." *State v. Donnell*, 239 N.W.2d 575, 578 (Iowa 1976). If the State does not establish such facts, the evidence seized as a result of the stop must be suppressed. *State v. Lamp*, 322 N.W.2d at 51.

■ Because Chief Becker saw Bishop and another man leave the Hideaway

around 2:00 a.m., he could reasonably believe they had been drinking. Minutes later he saw the defendant, who resembled Bishop's companion, in Bishop's car, which was in the parking lot of another tavern. He was unable to converse with the defendant, who was slumped down in the front seat of the car while its engine was running. His suspicion of the defendant's intoxication was supported by Bishop's admission that he and the defendant had been drinking in the Hideaway. We conclude that "[b]ased upon [the] whole picture," *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981), Chief Becker thus had reasonable cause to believe the defendant was publicly intoxicated.

Chief Becker could then request the defendant to step out of the car. *See* 3 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.2(d) at 9 (Supp.1986) ("ordering a suspect out of a car ... is a generally permissible tactic in connection with *Terry* stops of vehicles"). He could also request the defendant to perform dexterity tests to determine whether there was probable cause to arrest for intoxication.[2] *Cf. Adams*, 407 U.S. at 146, 92 S.Ct. at 1923, 32 L.Ed.2d at 617. *Compare People v. Carlson*, 677 P.2d 310, 317 (Colo.1984) (probable cause required before ordering driver to perform sobriety tests) *with State v. Superior Court*, 149 Ariz. 269, 718 P.2d 171, 175–76 (Ariz.1986) (probable cause not required before requesting driver to perform roadside performance-based sobriety tests; court expressly refused to adopt the rule of *Carlson*, 677 P.2d at 317); *State v. Wyatt*, 687 P.2d 544, 553 (Hawaii 1984) (probable cause not required before ordering driver to perform field sobriety tests); *State v. Little*, 468 A.2d 615, 617 (Me.1983) (probable cause not required before requesting driver to perform field sobriety tests); *State v. Purdie*, 680 P.2d 576, 578 (Mont.1984)

---

**2.** Public intoxication is a misdemeanor. *See* Iowa Code § 123.46. The defendant, without direct authority, asserts the reasonable-cause standard does not extend to the investigation of misdemeanors. We reject this assertion in the circumstances of this case. In any event, because public intoxication poses a threat to the safety of defendants as well as society, we conclude it is a sufficiently "serious" offense to uphold an investigatory stop.

(same); *State v. Anderson*, 359 N.W.2d 887, 892 (S.D.1984) (probable cause not required before requesting driver to undergo breath test).

When the defendant, carrying the odor of alcohol, staggered after getting out of the car, and then failed to pass the dexterity tests, probable cause to arrest for public intoxication clearly arose. As a result, the evidence obtained in the search incident to the defendant's arrest could be admitted at trial. *See United States v. Robinson*, 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427, 441 (1973) (search of person incident to arrest permits search of effects found on person).

We conclude the district court erred in sustaining the defendant's motion to suppress the cocaine and knife.[3]

REVERSED AND REMANDED.

---

**3.** The defendant did not seek discretionary review of the district court's order overruling his motion to suppress the gun found in Bishop's car. We therefore do not consider his argument in this appeal that the district court erred in not ordering suppression of that evidence.