**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rebecca Severa MORENO,
Defendant–Appellant.**

No. 88–1331.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1989.

Decided Dec. 8, 1989.

**248**

Nicholas F. Reyes, Fresno, Cal., for defendant-appellant.

Donald W. Searles, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

* The Honorable Thomas Zilly, United States District Judge for the Western District of Washington, sitting by designation.

Before WALLACE and NOONAN, Circuit Judges, and ZILLY, District Judge.*

NOONAN, Circuit Judge:

Rebecca Severa Moreno was convicted by a jury of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). She appeals. We remand for a hearing.

## FACTS

On June 12, 1987, as a result of an undercover operation, a combination of local and federal officers executed a search warrant at a house located at 11798 South Elm Avenue, Corruthers, Fresno County, California. They discovered a quantity of cocaine and more than $17,000 in United States currency in the house. Two marked police cars were parked in front of the house and there were a number of unmarked police cars in its vicinity. As the search was going on, Moreno left the road and drove on to the dirt area between the road and the beginning of the yard surrounding the house. She looked at Officer Reyna and then slowly drove off. Reyna pursued her, pulled her over and asked for her identification. Under his questioning she admitted she lived at the South Elm address. He thereupon brought her back to the residence where she was placed under arrest.

Also under arrest because they were found within the house were her son Eduardo Ramirez, age 22, her second son, 20 year-old Heriberto, and her 16 year-old daughter Maria Elena, who had graduated from high school the day before. Moreno also had with her her seven month-old infant.

After the initial entry of the officers, DEA Special Agent Flanagan arrived at the house. He inspected it and the drugs

found and then advised Moreno and her three older children of their *Miranda* rights. They said nothing in response.

Sergeant Huerta of the Fresno County Sheriff's Office asked Flanagan if he could speak to Moreno in regard to the forfeiture of the assets. Flanagan agreed. Moreno was taken by Huerta to a separate room. Huerta asked her if she was involved in the sale of cocaine and if she knew that her husband had purchased an automobile with profits from cocaine. She answered these questions affirmatively.

According to Flanagan's testimony at the suppression hearing, he was not informed by Huerta of what Moreno told him. After this incident, Flanagan took Moreno to the kitchen or patio to take a photograph. He also told her to call someone to pick up the baby, and she made the call. Maria, in handcuffs, was presented to her mother before being taken away. Both she and her mother were crying. At this point Moreno stated to Flanagan that she wanted to cooperate. "She was very concerned about her juvenile daughter." Flanagan advised her that Maria would be booked at juvenile hall and that an adult or family member could then pick her up. Moreno's "response was that she would tell anything if her daughter could be released." Flanagan said he could not promise that Maria would be released. Moreno's "main concern" continued to be "for the daughter and the baby itself." In the conversation that followed, Moreno admitted that her husband distributed drugs and that she had assisted him.

After her indictment Moreno contended that she had been arrested without probable cause, that she had never been given the *Miranda* warning, and that her statements to Huerta and Flanagan were involuntary. She moved to suppress her admissions. The government agreed that the first confession to Huerta must be suppressed but contended that the second confession to Flanagan was voluntarily made by a person aware of her *Miranda* rights. The district court ruled that her arrest had been based on probable cause and that she was "effectively advised of her *Miranda* rights before being questioned by Agent Flanagan." The admissions made to Flanagan were introduced by the government at her trial and constituted a substantial part, though not all, of the case against her. She now seeks reversal of her conviction on the same grounds on which she moved to suppress the evidence.

## ANALYSIS

**1. *Probable Cause for Moreno's Arrest.*** Moreno approached her own house filled with drugs and cash and surrounded by police cars and drove away. It was reasonable for the police to make a *Terry* stop to determine why she had driven toward the house and then changed her mind at the sight of the cars and the officer. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When the officer learned that she lived at the address where substantial evidence of criminal activity had been found, there was probable cause to place her under arrest. *Michigan v. Summers*, 452 U.S. 692, 705, 101 S.Ct. 2587, 2595, 69 L.Ed.2d 340 (1981).

**2. *The Voluntariness of Moreno's Second Confession.*** Moreno contends that in violation of her *Miranda* rights she was questioned by Huerta and that the later confession to Flanagan was the fruit of a poisoned tree—that is, Flanagan would not have questioned her again unless he knew of her admissions to Huerta, and she would not have confessed to Flanagan unless she had already confessed to Huerta.

The confession to Huerta was properly suppressed, not because it was coerced, but because it was volunteered without the *Miranda* warnings having been given. The admissibility of the second confession to Flanagan turns solely on whether it was knowingly and voluntarily made. *Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985). The government has the burden of showing that Moreno voluntarily waived her right not to incriminate herself. *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

The government concedes that it took measures to separate Moreno from her

baby and that Maria Elena was handcuffed, was in tears, and was about to be taken off by the authorities when her mother was moved to confess. The government says its actions were lawful. Moreno had to go to jail. The infant did not need to go, and it was better that a neighbor take care of the baby. Maria Elena was a suspect found in a house full of cash and cocaine. There was probable cause for her arrest and, if arrested, she had to be booked. There was, the government maintains, no coercion directed at Moreno. The government's actions, the government contends, could not be equated with torturing her or applying other unconscionable coercion.

The Fifth Amendment does not protect a defendant from "moral and psychological pressures to confess emanating from sources other than official coercion." *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986), quoting *Elstad, supra* at 305, 105 S.Ct. at 1291. But in these circumstances the moral and psychological pressure to confess may have resulted from official action, and that action may have been intended by those engaging in it to have a powerful effect upon Moreno's feelings. This possibility requires the district court to examine "the surrounding circumstances and the entire course of appellee's conduct with respect to the suspect." *Elstad*, 105 S.Ct. at 1298. However, every official act does not automatically rise to the level of unconstitutional coercion sufficient to taint a confession. The "crucial element" is "police overreaching." *See Connelly*, 479 U.S. at 164, 107 S.Ct. at 520. No one factor should be determinative. Rather, "the totality of all the circumstances" should determine the voluntariness of Moreno's later confession. *See United States v. Wauneka*, 770 F.2d 1434 (9th Cir.1985).

The government suggests the trial court's ruling denying suppression carries with it the implicit determinations necessary to satisfy the government's burden that Moreno voluntarily waived her right not to incriminate herself. We reject this suggestion. The determination of the issue necessarily requires a hearing and findings as to whether under *Elstad* the second confession was voluntary.

We reverse and vacate the pretrial suppression order of the district court and remand for a determination of voluntariness of the second confession consistent with this opinion. If on remand the district court should determine that the confession was not voluntary, Moreno would be entitled to a reversal of her conviction and a new trial.

REMANDED.