STATE of Iowa, Appellee,

v.

Matthew J. HAVILAND, Appellant.

No. 94–443.

Supreme Court of Iowa.

May 24, 1995.

William H. Habhab, Fort Dodge, for appellant.

Thomas J. Miller, Atty. Gen., Angelina M. Smith, Asst. Atty. Gen., James J. Koll, County Atty., and James E. Fitzgerald, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

PER CURIAM.

Matthew J. Haviland appeals from his conviction, following a bench trial, for possession of marijuana in violation of Iowa Code section 124.401(3) (1993). Haviland contends the district court erred in failing to suppress the marijuana found in his vehicle as evidence gathered pursuant to an illegal investigatory stop. We reverse the district court judgment.

As Haviland alleges a violation of his constitutional rights, our review is de novo. *State v. Scott,* 518 N.W.2d 347, 349 (Iowa 1994).

At trial, police officer Kevin Kruse testified as to the events that took place on the night in question. On October 23, 1993, at about 12:30 a.m., Kruse and a fellow officer were on routine patrol on a gravel road two miles north of Fort Dodge. A limestone mining and processing plant, Northwest Limestone, and farmhouses were in the area. As the officers rounded a curve in the road, they noticed the headlights of a vehicle come on about 150 yards away in the vicinity of the plant entrance. The plant entrance consisted of a driveway that contained a locked gate with a "keep out" sign. Kruse initially testified the vehicle was parked "in" the plant's driveway but then qualified the statement on cross-examination by saying, "not necessarily in the driveway but in the driveway area." The officers could not see what kind of vehicle it was and the occupants of the vehicle could not see that the vehicle approaching was a law enforcement vehicle. The vehicle drove towards the officers. The area had in the past been the subject of complaints about burglaries, juvenile alcohol possession and marijuana use. However, no complaints had been made within the past week. The officers stopped the vehicle as it came abreast of the police car.

Two individuals were in the vehicle, defendant Matthew Haviland, and codefendant Brian Nottger. The officers saw what appeared to be marijuana on the floor of the vehicle and arrested the occupants. They were charged with possession of marijuana. Haviland's motion to suppress the marijuana was overruled and he was subsequently found guilty as charged.

The police may stop and briefly detain a person for investigative purposes if the officer has reasonable cause to believe a crime may have occurred. *State v. Rosenstiel,* 473 N.W.2d 59, 61 (Iowa 1991). To meet the reasonable cause standard a police officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 308 (1990) (citing *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989)). Reasonableness of a stop is measured by whether the facts available to the officer at the moment of the stop would warrant a person of reasonable caution to believe the action taken was appropriate. *State v. Wiese,* 525 N.W.2d 412, 414 (Iowa 1994).

Kruse's stated suspicion appears to have been partly based on: (1) the vehicle being parked in a closed business area; and (2) the vehicle turning on its lights and leaving as the police turned the curve in the road. These two factors by themselves do not constitute more than an inchoate and unparticularized suspicion. *See People v. Freeman,* 413 Mich. 492, 320 N.W.2d 878, 880

(1982) (a lone vehicle idling in a darkened parking lot at 12:30 a.m. does not, without more, support a reasonable suspicion of criminal activity); *State v. Sarhegyi,* 492 N.W.2d 284, 287 (N.D.1992) (mere avoidance of a police car is insufficient unless erratic, fast, and extreme) (citing *State v. Anderson,* 155 Wis.2d 77, 454 N.W.2d 763 (1990); *People v. Lambert,* 174 Mich.App. 610, 436 N.W.2d 699 (1989); *State v. Johnson,* 444 N.W.2d 824 (Minn.1989)).

In *State v. Richardson,* 501 N.W.2d 495, 497 (Iowa 1993), this court considered defendant's "furtive action" of pulling out of an area of a private business as the police approached significant in concluding there was reasonable suspicion to stop defendant's car. However, *Richardson* is distinguishable because the police in that case were able to articulate something more than the defendant's car pulling out of a private business. *See Rosenstiel,* 473 N.W.2d at 62 (seemingly innocent activities may combine with other factors to give an experienced officer reason to suspect wrongdoing). In *Richardson,* the defendant was parked in a completely non-residential area beside a closed business that had frequently been burgled, the defendant saw it was the police approaching, and the defendant pulled out ahead of the police vehicle just as it completed a U-turn and began approaching. The officer in *Richardson* perceived this last move as a deliberately furtive action. In Haviland's case, the area was residential with a business in it, the business had not reported any burglaries or vandalism as far as Kruse knew, Haviland apparently could not see that the vehicle turning the corner was a law enforcement vehicle, and he drove in a lawful manner towards the police. There were no deliberately furtive actions according to Kruse's own testimony:

Q. With a prompt response to your lights coming on, that's what really made it such that the cars were side-by-side? A. Yes.

Q. Okay. And following that you didn't see any furtive or suspicious movement? A. Before that, no.

Q. Before that or after that? A. No.

Q. ... Let's put it this way. At no time did you see any suspicious or furtive movement on the part of the [d]efendants? A. Because it was dark and we couldn't see anyway.

Moreover, Kruse was not investigating a crime or responding to an "in-process" crime; he had no information respecting the car or its occupants; he had not been informed of any recent suspicious activities in that area; the area was not a particularly "high crime" spot; Kruse observed Haviland's vehicle for a very short time during which the vehicle did not behave erratically or illegally; and 12:30 a.m. on a Friday night/Saturday morning is not an unreasonable time to be out and about. *See Thompson v. Reuting,* 968 F.2d 756, 759 (8th Cir.1992); *United States v. Nicholas,* 448 F.2d 622, 624–25 (8th Cir. 1971); *State v. Cooley,* 229 N.W.2d 755, 761 (Iowa 1975); *State v. Varvel,* 436 N.W.2d 649, 651 (Iowa App.1988); *State v. Losee,* 353 N.W.2d 876, 878–79 (Iowa App.1984).

Haviland apparently could not see if the approaching vehicle was a police car. The State argues that Haviland's departure on seeing *any* car approach is important in establishing reasonable cause. We do not know of any case law or other authority which suggests that a private citizen's avoidance of another private citizen as opposed to the police is indicative of criminal behavior. In any event, we question whether Haviland's movements can be interpreted as "furtive" when he was not avoiding or fleeing the approaching vehicle but driving *towards* it in a lawful manner. *Cf. United States v. Briggman,* 931 F.2d 705, 709 (11th Cir.1991), *cert. denied,* 502 U.S. 938, 112 S.Ct. 370, 116 L.Ed.2d 322 (1991) (car evaded police approach by departing from parking lot); *Losee v. Dearinger,* 911 F.2d 48, 50 (8th Cir.1990) (car moved in and out of area after it became aware of police presence); *United States v. Moreno,* 891 F.2d 247, 249 (9th Cir.1989) (defendant saw search of her residence by police and drove off in opposite direction); *Richardson,* 501 N.W.2d at 496 (defendant saw police take a U-turn and then pulled out and drove away from police).

Kruse did not state what criminal activity in particular he thought Haviland was en-

gaged in. Kruse merely had a generalized suspicion that any vehicle in the vicinity of the closed business entrance might be engaged in criminal activity. *See Rosenstiel*, 473 N.W.2d at 62 (officer must act on facts directly relating to suspect's guilt and not just on circumstances which describe very broad category of predominantly innocent persons); *see also Wiese*, 525 N.W.2d at 416 (observation of slow-moving vehicle in "high watch" area constituted only general suspicion not warranting stop). This scant basis cannot support reasonable suspicion warranting invasion of a person's privacy by momentarily detaining and questioning them. *See Nicholas*, 448 F.2d at 625.

The district court's denial of Haviland's motion to suppress marijuana found as a result of the investigatory stop constitutes error. Haviland's conviction is reversed and this case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting).

Because I entirely agree with the trial court ruling, I respectfully dissent.

I agree with the majority's recitation of the facts, though I would emphasize certain matters related by the deputy sheriff in his testimony. A gravel, winding, country road that passes by the limestone plant runs adjacent to the Des Moines river. Opposite the river, except for the plant, is a rural area; the nearest farm lane at the point was another 150 yards beyond the plant entrance. The gate of the plant entrance, the one in which the defendant's vehicle was parked, was closed. It was posted with a "keep out" sign. It was dark and the road was not lighted. Although the officers were not responding to a call or other emergency, they were in the area on assignment, and the choice of the patrol route was not a random selection. This was partly because the plant manager had requested it. It was also because there had been a number of burglaries in the area. And the area was known by the officers for

other problems. For one thing, according to the deputy sheriff, "usually there is marijuana in that area that we've kept an eye on." Use of the area by juveniles for consumption of alcohol had also led to arrests.

It was under these circumstances that the officers, coming around a bend in the road, noticed the defendant's vehicle parked at the plant entrance with its lights off. On the approach of the patrol car, the defendant's vehicle backed out, turned its lights on, and the officers saw the vehicle "take off" toward them.

The trial court first recited the requirements for a *Terry* stop, and then pointed out:

Otherwise innocent activities may in combination with other circumstances give a law officer necessary cause to suspect wrongdoing and make a stop. Pertinent circumstances which have been considered by the courts in determining the constitutional validity of a stop include:

1. Whether the officer is investigating a specific crime which is alleged to have occurred in the area of the stop [citing *State v. Stevens*, 394 N.W.2d 388, 391 (Iowa 1986); *State v. Lamp*, 322 N.W.2d 48, 51 (Iowa 1982); *State v. Latham*, 380 N.W.2d 743, 745 (Iowa App. 1985)].

2. The nature, movements or activities of the stopped person or the vehicle in which [he or she] is riding [citing *State v. Rosenstiel*, 473 N.W.2d 59, 61 (Iowa 1991); *Stevens*, 394 N.W.2d at 391; *Lamp*, 322 N.W.2d at 51; *State v. Cooley*, 229 N.W.2d 755, 759–61 (Iowa 1975)].

3. History of crime in the area of the stop [citing *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993); *State v. Donnell*, 239 N.W.2d 575, 577 (Iowa 1976); *State v. Losee*, 353 N.W.2d 876, 878–79 (Iowa App.1984)].

4. Time of stop [citing same authorities].

5. Nature of the area in which the stop occurred [citing same authorities].

While the officer in this case was on routine patrol and not investigating a specific crime in the area of the stop, all the other factors mentioned above were such

that he could have had a reasonable belief that criminal activity may have occurred involving the occupants of the stopped car. This particular bit of road had a history of a variety of criminal conduct which required heavier than ordinary patrolling. It was late at night when any vehicle stopped near the limestone business had no legitimate purpose with the business because it was closed. There is nothing to show that the vehicle or its occupants had stopped near any residence where they had any legitimate business. The character of the area in general was not such that any car had any legitimate purpose at that time of night to be stopped at that location with its lights off. Criminal conduct had occurred in the area. Those past crimes were of the type which the passengers in the car the officer observed could have been committing when he came upon them. The fact that when any vehicle drove toward the defendants' stopped vehicle it immediately turned on its lights and drove away from the vicinity is a suspicious circumstance. These facts are almost identical to those in *Richardson*, cited above, in which the court upheld the denial of the motion to suppress.

The trial court correctly relied on our *Richardson* holding, noting its facts bore striking factual similarities to those presented here. In *Richardson*, we noted that the officer, who was on routine night patrol,

> saw a silver car parked near the chain-link fence next to a marina. He thought it was a suspicious place to park, since the surrounding businesses were all closed and there were no residences in the vicinity. [The officer] knew that the marina area had frequently been burglarized.

*Richardson*, 501 N.W.2d at 496.

The factual circumstances enumerated by the district court reasonably gave rise of a particularized suspicion on the part of the officers, who acted prudently. Given the circumstances, they would have been naive not to have suspected wrongdoing. I would affirm.