# IN THE COURT OF APPEALS OF IOWA

No. 14-1619
Filed July 9, 2015

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**DOUGLAS HENRY OLLINGER,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Pocahontas County, Kurt L. Wilke, Judge.

A criminal defendant appeals his conviction and sentence following the district court's denial of a motion to suppress. **REVERSED AND REMANDED.**

Derek Johnson of Johnson & Bonzer, P.C., Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Ann Beneke, County Attorney, and Ashley Bennett, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Douglas Ollinger challenges the investigative stop that resulted in his arrest for operating while intoxicated (OWI), second offense. Ollinger claims his constitutional protection against unreasonable searches and seizures was violated when a sheriff's deputy stopped his vehicle without reasonable suspicion or probable cause. Because the State's evidence did not justify the seizure, we reverse the ruling denying Ollinger's motion to suppress.

## I.    Background Facts and Proceedings

About 10:15 p.m. on March 14, 2014, concerned citizen Kim Himrod called emergency dispatch to report a "suspicious vehicle" parked near her neighbor's farmstead in rural Pocahontas County. The neighbor's house was empty because the husband had died and the wife moved to a nursing facility. Himrod, whose property was located about a quarter of a mile away, told dispatch she watched the vehicle for half an hour before "she shined a flashlight on it, which caused it to move or leave."

Pocahontas Deputy Sherriff Steven Henderson responded to the call. While driving toward the scene, the deputy received information the vehicle was travelling on a county road toward Iowa Highway 4, but dispatch did not relay a make or model of the car or which direction the car would be traveling on Highway 4. The dispatch described the vehicle as a "small, dark-colored passenger car." Deputy Henderson saw two vehicles matching this general description on Highway 4. He requested another officer obtain the license plate number of the first vehicle. Deputy Henderson then followed the second vehicle

and pulled it over to investigate the "suspicious activity" reported to dispatch. Ollinger was driving the car stopped by Deputy Henderson. The deputy noticed Ollinger smelled like alcoholic beverages. Ollinger also had slurred speech and bloodshot and watery eyes. The deputy arrested Ollinger for OWI.

The State charged Ollinger by trial information on March 26, 2014. Ollinger filed a motion to suppress on April 23. After holding a suppression hearing[1] on May 27, 2014, the district court denied the motion. In its ruling, the court discussed both reasonable suspicion and probable cause but based its order solely on reasonable suspicion for the stop. The court cited Ollinger's "furtive" action of leaving the property after Himrod shined her flashlight at his car. Ollinger was tried on the minutes of testimony and found guilty. On September 18, 2014, the court sentenced Ollinger to 365 days of incarceration with all but seven days suspended. The court placed him on probation and ordered a fine of $1875.

## II.    Standard of Review

Ollinger asserts the investigative stop violated both his state and federal constitutional rights to be free from unreasonable search and seizure. U.S. Const. amend. IV; Iowa Const. art. I, § 8. The constitutional dimensions of these claims call for a de novo review. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). A de novo review requires "an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011) (citation and internal quotation marks omitted).

---

[1] Deputy Henderson was the only witness at the suppression hearing.

### III.    Analysis

A traffic stop is permissible under the state and federal constitutions when supported by probable cause or reasonable suspicion of a crime. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). Law enforcement may perform an investigative stop "[i]n the absence of probable cause if the police have reasonable suspicion to believe criminal activity is taking place." *Pals*, 805 N.W.2d at 774. When the motorist challenges the stop on the basis that reasonable suspicion was not present, the State must show the officer had specific and articulable facts, which when taken together with reasonable inferences, would lead one to believe criminal activity had occurred. *State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).

"Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." *State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990). The State must prove by a preponderance of the evidence that the officer had probable cause to stop the vehicle. *State v. Predka*, 555 N.W.2d 202, 206 (Iowa 1996). Any "traffic violation, no matter how minor, gives a police officer probable cause to stop the motorist." *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006) (citation omitted).

### A.    Reasonable Suspicion

Deputy Henderson had limited information available to him. He learned from dispatch that a named citizen, Himrod, had reported a "suspicious vehicle" near a vacant farmstead a quarter of a mile away from her property. Himrod

could not see if the vehicle was on her neighbor's property or parked on the road. Himrod watched the vehicle for approximately a half hour and told dispatch that when she shined a flashlight at the vehicle, it drove away. The deputy admitted he did not know if the driver of the vehicle could see the beam from Himrod's flashlight. Himrod gave a "general description" of the vehicle but was not able to provide the color, make, model, or license plate number.

While driving to the scene, Deputy Henderson saw two cars matching the general description given by Himrod. Deputy Henderson bypassed the first car and chose to stop the second car, which was driven by Ollinger. The deputy testified he was not certain he was stopping the same car that Himrod reported. Even if Deputy Henderson correctly played the fifty-fifty odds and stopped the car that was the subject of Himrod's concerns, her concerns did not amount to reasonable suspicion that a crime had been committed. The deputy testified that to his knowledge Himrod had not reported any activity that was illegal.

In deciding this suppression issue, we first turn to case law on citizen tips. In *State v. Kooima*, 833 N.W.2d 202, 204 (Iowa 2013), an anonymous tipster reported seeing several individuals he believed to be intoxicated preparing to drive away. The tipster in *Kooima* was able to provide the license plate number, make, model, color, and some description of the driver. *Kooima*, 833 N.W2d at 204. But our supreme court held that a call from "an anonymous tipster, without relaying a personal observation of erratic driving, other facts to establish the driver is intoxicated, or details not available to the general public as to the

defendant's future actions does not have the requisite indicia of reliability to justify an investigatory stop." *Id.* at 210-11.

In this case, a named citizen supplied the tip. Information imparted by a citizen informant is generally considered reliable. *See State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990). But even if we assume Himrod was a reliable source, the quality of her information was wanting in two regards. First, she offered only a vague accusation of "suspicious" behavior by the driver of the vehicle parked at her neighbor's place and second, she gave dispatch only a general description of that vehicle.

On the first point, the deputy testified that based on Himrod's report, he was investigating a possible trespass or burglary, adding "I mean, a number of different crimes associated with the—that could occur at an abandoned farm place like that." The deputy testified vacant farm houses in rural counties were targets for burglars: "[I]t's just a matter of time when somebody comes on the property looking for something." But the deputy agreed he had no information whether anyone was authorized to be on the property of Himrod's neighbor before stopping Ollinger's car.

We recognize seemingly innocent activities may combine with other factors to give experienced law enforcement officers cause to suspect wrongdoing. *State v. Haviland*, 532 N.W.2d 767, 769 (Iowa 1995). But a generalized suspicion that any vehicle in the vicinity of a closed business might be engaged in unlawful activity is not enough to allow an invasion of the driver's privacy. *Id.* The same concept applies here. A blanket concern about burglaries

in rural Iowa did not provide the deputy reasonable suspicion for a stop in this particular case. The deputy was unaware of any specific burglaries at the location in question.

Even if we assume Himrod's action in shining the flashlight prompted the car to leave, "[w]e do not know of any case law or other authority which suggests that a private citizen's avoidance of another private citizen . . . is indicative of criminal behavior." *See id.* This case is unlike the stop upheld in *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993), when the defendant's vehicle was parked late at night in a commercial area, which had a history of illegal activity and no legitimate attractions, and left to avoid an approaching police officer. Here, the deputy stopped a car which may have been seen by a citizen parked near a vacant farm house—without any other factors contributing to reasonable suspicion. The indefinite information reported to dispatch and the deputy's general knowledge concerning rural burglaries did not give the deputy a legitimate reason to conduct an investigative stop. *See Haviland*, 532 N.W.2d at 770.

### B. Probable Cause

As a back-up argument, the State contends that if we reject the stop based on the concerned citizen's report, we may uphold it based on probable cause of traffic offense, specifically a violation of Iowa Code section 321.297(1) (2013), which requires that vehicles be driven on the right half of the roadway. Ollinger argues the State may not rely on this alternative ground because the district court's ruling rested solely on Deputy Henderson's reasonable suspicion

that Ollinger was involved in a trespass or burglary.  *See DeVoss v. State*, 648 N.W.2d 56, 63 (Iowa 2002).

We may uphold the ruling of the district court "on a ground other than the one upon which the district court relied provided the ground was urged in that court*." Id.* at 61.  The traffic-offense rationale was anticipated by Ollinger in his brief in support of the motion to suppress; the defense argued "one isolated 'drift' to the center and 'possibly' touching or crossing the centerline" does not provide grounds for the stop.  The district court noted Ollinger's argument that a "single episode of veering to the centerline, but not crossing, adds nothing to [the State's] case (citing *State v. Tague*, 676 N.W.2d 197 (Iowa 2004))."  While not the express basis for the decision to uphold the stop, the probable-cause ground was urged in the district court and is properly before us on appeal.

To establish probable cause the State asserts Deputy Henderson saw Ollinger violate section 321.297(1).[2]  But the deputy's testimony at the suppression hearing does not support a violation of that statute.  During his direct examination, Deputy Henderson testified:  "As I was attempting to catch up to the vehicle, I did notice it cross the centerline."  Deputy Henderson's resolve softened significantly as he was questioned further.  During cross-examination, the deputy admitted he was as far as two-hundred yards away and on the phone with another officer when "it appeared" to him that Ollinger "drifted over to the centerline and crossed the centerline."  The deputy also said: "I believe he did

---

[2] "A vehicle shall be driven upon the right half of the roadway upon all roadways of sufficient width, except [for circumstances not present in this case]."  Iowa Code § 321.297(1).

touch the centerline. He was on the centerline." Finally when asked by defense counsel "[s]o you think [Ollinger's] vehicle touched the centerline, not sure if he crossed it?" Deputy Henderson responded, "Correct."

In *Tague*, our supreme court determined a police officer lacked probable cause to stop a motorist for a violation of section 321.297 when the motorist crossed an edge-line marking, not the center line of the roadway. 676 N.W.2d at 203. The *Tague* court also decided the motorist's "single incident of crossing the edge line for a brief moment" did not give the officer probable cause to stop for a violation of section 321.306, which requires a vehicle be driven "as nearly as practical entirely within a single lane." *Id.* at 204.

While not controlling, we find the discussion concerning incidental and momentary crossing of the edge line in *Tague* to be instructive. Deputy Henderson was not sure if Ollinger's car crossed or just touched the centerline. The language of section 321.297(1) does not criminalize touching the centerline but rather mandates "driving" on the right half of the roadway. We are persuaded by decisions from other jurisdictions analyzing similar traffic statutes. *See, e.g.*, *People v. Del Re*, No. 2-11-0984, 2012 WL 6967969, at *5 (Ill. App. Ct. June 12, 2012) (opining that "driving on the centerline pavement marking and driving 'upon the right half of the roadway' (625 ILCS 5/11–701(a) (West 2010)) are not necessarily mutually exclusive acts"); *State v. McGregor*, No. 107, 855, 2013 WL 1010590, at *2-3 (Kan. Ct. App. Mar. 8, 2013) (reversing conviction for failing to drive on right side of roadway when defendant "touched the center line once with her driver's side tires and some bodywork extended over the line itself" but "her

vehicle traveled on the right half of the roadway and did not cross the center line"); *State v. Loyd*, 326 S.W.3d 908, 915 (Mo. Ct. App. 2010) (concluding driving car with tires "touching the center line" alone was an insufficient basis to conduct a traffic stop); *Commonwealth v. Enick*, 70 A.3d 843, 848 (Pa. Super. Ct. 2013) (upholding stop under similar traffic violation but noting its analysis did not "foreclose the possibility that a momentary and minor violation of [75 Pa. C.S.A.] § 3301 might, in a different case, be insufficient to establish probable cause for a vehicle stop").

Deputy Henderson did not have a good view of Ollinger's path of travel and was unconvincing in his testimony concerning the traffic violation, which is likely why the district court did not rely on probable cause to uphold the stop. In our de novo review of the record, we conclude probable cause did not exist to find a violation of section 321.297(1). *See State v. Stanley*, No. 12-1855, 2013 WL 3458079, at *2 (Iowa Ct. App. 2013) (holding no probable cause to believe defendant violated section 321.297 when deputy did not see, but assumed, car crossed center line).

Because the record shows neither reasonable suspicion nor probable cause that Ollinger was committing a crime, the stop of his vehicle violated his rights under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. We reverse the denial of Ollinger's motion to suppress and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**