# IN THE COURT OF APPEALS OF IOWA

No. 18-0407
Filed April 17, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSE MANUEL CRUZ ORDONEZ,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

Jose Manuel Cruz Ordonez appeals the denial of his motion to suppress evidence of a field sobriety test and his subsequent conviction for operating a vehicle while intoxicated (first offense). **AFFIRMED.**

Benjamin D. Bergmann and Alexander D. Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas E. Bakke, Assistant Attorney General, for appellee.

Considered by Vogel, C.J., Vaitheswaran, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Judge.**

Jose Manuel Cruz Ordonez appeals the denial of his motion to suppress evidence of a field sobriety test.

## I.    *Background Facts and Proceedings*

A patrol sergeant with the Iowa State University Department of Public Safety stopped a vehicle for crossing the center line and driving at erratic speeds. After observing signs of intoxication in driver Cruz Ordonez, the officer asked him to step out of the vehicle. Within a few minutes, the officer placed him in his squad car and administered the horizontal-gaze nystagmus (HGN) test.[1] According to the officer, Cruz Ordonez failed the test. Cruz Ordonez refused to submit to further sobriety testing. The officer arrested him for operating a motor vehicle while intoxicated.

The State charged Cruz Ordonez with operating while intoxicated (first offense) and possession of marijuana (first offense). Cruz Ordonez agreed to plead guilty to the OWI charge in exchange for dismissal of "all companions." The district court adjudged him guilty and placed him on probation.

---

[1] The Supreme Court has described the test as follows:
> The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated "the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct."

*Pennsylvania v. Muniz*, 496 U.S. 582, 585 n.1 (1990) (quoting 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, pp. 8A–43, 8A–45 (1989)); *see State v. Murphy*, 451 N.W.2d 154, 156 (Iowa 1990) ("An inability of the eyes to maintain visual fixation as they are turned from side to side is known as 'horizontal gaze nystagmus.'").

Cruz Ordonez filed a postconviction-relief application, which resulted in his plea being set aside.[2]  The district court scheduled the matter for trial.

Meanwhile, Cruz Ordonez moved to suppress "evidence of his performance in or results of the HGN test, any observations by officers during that test, along with any other evidence or observations of law enforcement" after the test was administered.  He alleged,

> The officers' conduct in this case violated [his] privilege against self-incrimination as protected by article I, section 9 of the Iowa Constitution and/or the Fifth and Fourteenth Amendments. Alternatively, the officers' conduct amounted to a violation of Mr. Cruz Ordonez's right against illegal searches as guaranteed by article I, section 8 of the Iowa Constitution and/or the Fourth Amendment.

After an evidentiary hearing, the district court denied the motion.

Cruz Ordonez waived his right to a jury trial.  The State agreed to dismiss the marijuana charge and proceed solely with the OWI charge.  By further agreement, trial was held on the minutes of testimony.  The district court adjudged Cruz Ordonez guilty of operating while intoxicated (first offense) and imposed sentence.  On appeal, Cruz Ordonez reprises his arguments for suppression of the HGN test.[3]

## II.    Analysis

### A.    Fifth Amendment

Cruz Ordonez argues "[t]he officers' conduct in this case violated [his] privilege against self-incrimination as protected by article I, section 9 of the Iowa

---

[2] The criminal record does not indicate the basis for the postconviction court's ruling.
[3] Cruz Ordonez's suppression motion also raised a challenge to an inventory search.  The court's ruling on that issue is not a ground for appeal.

Constitution." "Although the Iowa Constitution does not contain an explicit right against compelled self-incrimination, we have found such a right under the due process clause of the Iowa Constitution." *State v. Schlitter*, 881 N.W.2d 380, 402 (Iowa 2016).

Cruz Ordonez does not suggest we should apply a different framework under the Iowa Constitution than is applied under the United States Constitution. He makes the same argument under both provisions, asserting "under both the federal constitution and the State constitution . . . in an HGN test there has to be some opportunity for the individual to deny taking the test."

The district court resolved the issue under the Fifth Amendment. Because we can do the same, "we need not and do not reach the claim under the Iowa Constitution." *State v. Washington*, 832 N.W.2d 650, 655 (Iowa 2013).

The framework for analysis of a Fifth Amendment claim was summarized in *Muniz*, 496 U.S. at 588–89 as follows:

> The Self-Incrimination Clause of the Fifth Amendment provides that no "person . . . shall be compelled in any criminal case to be a witness against himself." Although the text does not delineate the ways in which a person might be made a "witness against himself," we have long held that the privilege does not protect a suspect from being compelled by the State to produce "real or physical evidence." Rather, the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a 'witness' against himself."

(Alterations in original) (footnote omitted) (internal citations omitted). The Court applied this framework to decide "whether various incriminating utterances of a drunken-driving suspect, made while performing a series of sobriety tests,

constitute testimonial responses to custodial interrogation." *Id.* at 584. In pertinent part, the court held "any slurring of speech and other evidence of lack of muscular coordination revealed by [the defendant's] responses to [the officer's] direct questions constitute nontestimonial components of those responses." *Id.* at 592.

The Iowa Supreme Court also examined whether physical acts are testimonial under the Fifth Amendment. In a long line of opinions, the court uniformly made the same distinction that the Court made in *Muniz.*

Fifty years ago, the court addressed the precise question we face here: whether field sobriety test results are testimonial in nature. In *State v. Heisdorffer*, the court concluded the performance of field sobriety tests "does not amount to evidence by communication in whatever form that communication might take." 164 N.W.2d 173, 175 (Iowa 1969), *abrogated on other grounds by State v. Vietor*, 261 N.W.2d 828 (Iowa 1978) (citation omitted). The court continued, "The observation of defendant during the tests makes his actions real or physical evidence against himself, rather than testimonial evidence. Such tests are more nearly akin to the taking of blood samples, fingerprints or handwriting exemplars," none of which "violate his privilege against self-incrimination." *Id.*

The court reaffirmed this holding in *State v. Rauhauser*, 272 N.W.2d 432, 436 (Iowa 1978). There, the court stated, "The Fifth Amendment privilege against self-incrimination extends only to evidence of a testimonial nature. It does not protect an accused from the compulsory display of measurable or identifiable physical characteristics." *Rauhauser*, 272 N.W.2d at 436.

The court again reaffirmed *Heisdorffer* in *State v. Mannion*, where the issue was whether a videotape of a defendant's refusal to take field sobriety tests on

camera violated the defendant's right against self-incrimination. 414 N.W.2d 119, 120 (Iowa 1987). The court stated, "[s]tanding alone, in the absence of any evidence of [the defendant's] refusal, the videotape was admissible as physical, rather than testimonial, evidence. It does not violate the Fifth Amendment to compel physical, or real, evidence from an accused." *Id.*

This court reached the same conclusion in *State v. Marks*, an opinion on which the district court relied. 644 N.W.2d 35, 37 (Iowa Ct. App. 2002). We categorically stated, "The results of a field sobriety test are not testimonial evidence." *Id.* And we said a request "to provide non-testimonial evidence does not lead to a Fifth Amendment violation." *Id.*; *see also State v. Serrine*, No. 15-1496, 2017 WL 108290, at *5 (Iowa Ct. App. Jan. 11, 2017) (concluding it is not our role to revisit the Iowa Supreme Court holdings that sobriety tests are not testimonial evidence).

This precedent mandates a conclusion that the HGN field sobriety test did not implicate Cruz Ordonez's Fifth Amendment right against self-incrimination. The test elicited a physical, non-testimonial response rather than a communicative, testimonial response.

Nor does the claimed absence of an opportunity to "deny the test" implicate the Fifth Amendment right against self-incrimination. Cruz Ordonez cites no precedent to support the proposition that an officer must tell an OWI suspect of the right to refuse field sobriety tests. *Cf. Otto v. Comm'r of Pub. Safety*, ___ N.W.2d ___, 2019 WL 1320598, at *2 (Minn. Ct. App. 2019) (agreeing with district court's conclusion that no statutory authority or case law supported the argument that the officer had an obligation to tell the appellant he could refuse all field sobriety tests).

More critically, he does not explain how that type of advice would convert a field sobriety test from nontestimonial to testimonial evidence, triggering the right against self-incrimination. *Cf. State v. Farrow*, 144 A.3d 1036, 1045 (Vt. 2016) (stating "it is not clear how applying [constitutional] protections to nontestimonial evidence, including, presumably, the field sobriety exercises themselves, would lead to a requirement that police warn an individual that her refusal may be used as evidence in court"). In short, Cruz Ordonez's effort to circumvent established precedent is unavailing.

### B. Fourth Amendment

Cruz Ordonez next argues the HGN test was an unreasonable warrantless search not supported by the consent exception to the warrant requirement. Again, he appears to make the argument under the Fourth Amendment to the United States Constitution and article I section 8 of the Iowa Constitution.

"We follow an independent approach in the application of our state constitution." *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). "However, when a party does not argue an independent approach, 'we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent.'" *Id.* (citation omitted).

"Probable cause of a crime supports an arrest, while reasonable suspicion of a crime allows a peace officer to stop and briefly detain a person to conduct a further investigation." *Id*; *see also State v. Baker*, ___ N.W.2d ___, ___, 2019 WL 1412583, at *4 (Iowa 2019).

In *Marks*, 644 N.W.2d at 38, we stated, "When an officer has reasonable cause to believe a driver is operating while intoxicated, a suspect may be briefly

detained, asked to perform field sobriety tests and comply with other investigatory requests, without violating the suspect's Fourth Amendment rights."

We conclude *Marks* is controlling. *Cf. State v. Stevens*, 394 N.W.2d 388, 391 (Iowa 1986) (stating officer "could also request the defendant to perform dexterity tests to determine whether there was probable cause to arrest for intoxication"); *State v. Harlan*, 301 N.W.2d 717, 720 (Iowa 1981) (stating officer's observation of driver's bloodshot and watery eyes and alcohol on his breath was "enough to allow a reasonable suspicion that [the defendant] was driving under the influence of alcohol"); *Vondrachek v. Comm'r of Pub. Safety*, 906 N.W.2d 262, 269 (Minn. Ct. App. 2017) ("We evaluate the propriety of roadside sobriety testing as an investigatory expansion of a traffic stop rather than as a search. An officer's request that a driver perform roadside sobriety testing is not a search within the meaning of the Fourth Amendment." (internal citation omitted)).

Because the Fourth Amendment was not implicated, we need not reach the issue of whether Cruz Ordonez's consent to the search was voluntary under the United States Constitution. And because our analysis of whether article I, section 8 was implicated would be the same as our analysis under the Fourth Amendment, we need not reach the consent issue under our constitutional provision. *See State v. Pettijohn*, 899 N.W.2d 1, 25 (Iowa 2017).

We affirm the district court's denial of Cruz Ordonez's suppression motion and Cruz Ordonez's conviction, judgment, and sentence for operating a motor vehicle while intoxicated (first offense).

**AFFIRMED.**